## Commonwealth *v.* Clark, Appellant.

Argued September 17, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Allen N. Brunwasser,* for appellant.

*J. Kent Culley,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, December 13, 1971:
Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

This is an appeal from appellant's conviction for sixteen counts of corrupt solicitation[1] and sixteen counts of bribery.[2]

The Commonwealth proved at trial that appellant had approached a police detective with an offer of $400 per week in return for the officer's protection of appellant's dealings in narcotics. The officer, following the instructions of his superiors, indicated to the appellant that the bribe would be accepted. On sixteen different occasions between August 31, 1967, and January 19, 1968, the officer met the appellant at a pre-arranged meeting place, and on each of these occasions appellant gave the officer a packet of money. These payments were the basis for appellant's multiple convictions. The trial court sentenced appellant to "pay

[1] Act of June 24, 1939, P. L. 872, §304, 18 P.S. 4304.
[2] Act of June 24, 1939, P. L. 872, §303, *as amended,* July 31, 1963, P. L. 421, §1, 18 P.S. 4303.

a fine of $1,000 on each of the sixteen counts of corrupt solicitation, pay the costs of prosecution, and undergo imprisonment of not less than one year and not more than two years on each count of corrupt solicitation, each sentence to run consecutively, and not less than six months nor more than one year on each count of bribery, each sentence to run concurrently with the sentence on the counts of corrupt solicitation. . . ."

Appellant's primary contention on appeal is that the above sentence violates the double jeopardy provisions of the Pennsylvania and United States Constitutions because he was (1) sentenced twice for one crime, and (2) sentenced sixteen separate times for a unitary, continuing offense. I will consider each of these claims separately.

## I

Appellant argues that corrupt solicitation and bribery are one crime, and therefore, a conviction for both cannot be sustained. Our Court considered the operation of these two offenses in *Commonwealth v. Baker,* 146 Pa. Superior Ct. 559, 22 A. 2d 602 (1941). There we said that bribery and solicitation were separate offenses, bribery requiring the actual passing of money and solicitation being, in effect, an attempted bribe. *Commonwealth v. Baker,* supra at 561-562.

The question then becomes whether corrupt solicitation merges in the offense of bribery. It is clear that "[i]f a defendant has been convicted of a completed offense, there can be no prosecution for an attempt to commit the offense, since the attempt is merged into the crime." 10 Pennsylvania Law Encyclopedia *Criminal Law* §23 (1970); *see* Act of June 24, 1939, P. L. 872, §1107, 18 P.S. 5107. In *Commonwealth ex rel. Moszczynski v. Ashe,* 343 Pa. 102, 21 A. 2d 920 (1941), our Supreme Court stated that "[t]he true test of

whether one criminal offense has merged in another . . . is whether one crime *necessarily involves* another, as, for example, rape involves fornication, and robbery involves both assault and larceny . . . . Two crimes *may be* successive steps in *one* crime and therefore merge . . . ."

Corrupt solicitation is obviously a necessary prerequisite to the statutory offense of bribery. One cannot bribe without having made some agreement to bribe before or at the time of payment of the consideration. It was clearly error for the lower court to sentence appellant separately for both solicitation and bribery.[3]

## II

The lower court found that the appellant had approached a police detective "with an offer whereby the

---

[3] The fact that the lower court imposed concurrent sentences for these two offenses presents no problem. The "concurrent sentence doctrine" has been rejected by the United States Supreme Court in *Benton v. Maryland*, 395 U.S. 784 (1969) : "[t]he language used in a number of this Court's opinions might be read to indicate that the existence of a valid concurrent sentence removes the necessary elements of a justiciable controversy.

. . . .

"One can search . . . without finding any satisfactory explanation for the concurrent sentence doctrine. . . .

". . . Sibron and a number of other recent cases have canvassed the possible adverse collateral effects of criminal convictions . . . . . . . as in Sibron, both of petitioner's convictions might some day be used to impeach his character if put in issue at a future trial. Although petitioner could explain that both convictions arose out of the same transaction, a jury might not be able to appreciate this subtlety.

. . . .

". . . It is sufficient for present purposes to hold that there is no jurisdictional bar to consideration of challenges to multiple convictions, even though concurrent sentences were imposed." *Benton v. Maryland*, supra at 788-791.

defendant would pay [the police detective] a sum of Four Hundred ($400.00) Dollars a week in return for his protection of the defendant's dealings in narcotics . . . ." Appellant argues that the lower court improperly imposed upon him sixteen consecutive sentences for a single offense of bribery.

The question before our Court is whether the sixteen separate payments may be construed as sixteen separate criminal offenses. It is clear from the trial court's opinion that all sixteen payments were made pursuant to the original agreement for appellant's payment of $400 per week to the police detective. I cannot accept the Commonwealth's argument that the number of payments determines the number of crimes.

In *United States v. Universal C.I.T. Credit Corporation,* 344 U.S. 218 (1952), Mr. Justice FRANKFURTER indicated that the allowable unit of prosecution was to be determined by an analysis of legislative intent. In that case the government had argued that the Fair Labor Standards Act should have been construed " 'to punish each failure to comply with each duty imposed by the Act as to each employee in each workweek and as to each record required to be kept.' " *United States v. Universal C.I.T. Credit Corporation,* supra at 220. Justice FRANKFURTER rejected that argument: ". . . the history of this legislation and the inexplicitness of its language weigh against the Government's construction of a statute that cannot be said to be decisively clear on its face one way or the other . . . .

"The district judge was therefore correct in rejecting the Government's construction of the statute. The offense made punishable under the Fair Labor Standards Act is a course of conduct. Such a reading of the statute compendiously treats as one offense all violations that arise from that singleness of thought, purpose or action, which may be deemed a single 'impulse,'

a conception recognized by this Court in the Blockburger case, supra, at 302 [*Blockburger v. United States,* 284 U.S. 299 (1932)], quoting Wharton's Criminal Law (11th ed.) §34." *United States v. Universal C.I.T. Credit Corporation,* supra at 224.

In *United States v. Ketchum,* 212 F. Supp. 53 (S.D. N.Y. 1962), defendant Ketchum was charged with violating 18 U.S.C. §281. This statute prohibits any U. S. employe from receiving or agreeing to receive compensation for services rendered in connection with any matter before a governmental body in which the United States has an interest.[4] Ketchum had allegedly received a kickback for securing a construction contract for the Union Metal Manufacturing Co. The grand jury charged that Union Metal's agent had deposited one-half of his commissions in Ketchum's brokerage account in eight separate deposits. Ketchum moved to have eight of the counts against him (for the eight separate deposits) consolidated into one count. District Judge DAWSON granted the defendant's motion: "Counts 1 through 8 of the indictment are in every respect identical except that each charges a separate deposit by [the agent] to Ketchum's account. Count 9 of the indictment charges a conspiracy to commit offenses named in the first eight counts. Each re-

---

[4] "Whoever, being a Member of or Delegate to Congress, or a Resident Commissioner, either before or after he has qualified, or the head of a department, or other officer or employee of the United States or any department or agency thereof, directly or indirectly receives or agrees to receive, any compensation for any services rendered or to be rendered, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest or other matter in which the United States is a party or directly or indirectly interested, before any department, agency, court martial, officer, or any civil, military, or naval commission, shall be fined not more than $10,000 or imprisoned not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States." 18 U.S.C. §281.

ceipt of money by Ketchum is said to violate 18 U.S.C. §281.

"This motion seeks to set aside counts 2 through 8 as duplicative of count 1. It is defendant's contention that if the alleged acts took place they constitute one and not eight separate offenses. Each receipt of money being in furtherance of one single plan to defraud[,] they are all elements of a single crime punishable by a $10,000 fine and two years in prison. If the acts alleged to have been committed by defendant Ketchum involve eight distinct substantive crimes then consecutive sentences would make the maximum fine and commitment eight times as severe . . . .

"Congress has a choice when it enacts a criminal law as to what the allowable unit of punishment shall be. It may proscribe a particular act or a course of conduct. If the latter is found to be the intention of Congress then many acts thought to be separate offenses become part of one course of conduct and therefore constitute one crime. A course of conduct has been defined by the United States Supreme Court as one that arises from a singleness of thought, purpose or action—that which results from a single impulse. [citations omitted]

"The indictment in its present form charges only one course of conduct if that is the applicable unit of prosecution. Defendant Ketchum is charged with defrauding the United States by taking money from one of the competitive bidders on a contract. The first eight counts all relate to this one scheme . . . .

. . . .

"United States v. Personal Finance Company, 174 F. Supp. 871 (S.D.N.Y. 1959) involved loans by the defendant in violation of emergency consumer credit controls in effect during the Korean conflict. The loans were to different parties on different occasions.

Nevertheless, this court, on the authority of the C.I.T. case, found all violations of one type to be one offense and refused to find that each loan was a separate crime. The Government argued unsuccessfully that every loan must logically be the result of a new and distinct decision and as such the unit of prosecution adopted by Congress.

. . . .

"This court again considered duplicative counts of an indictment in United States v. Woody Fashions, Inc., 190 F. Supp. 709 (S.D.N.Y. 1961). The defendant was there charged with the misbranding of woolen products. The Government contended that each mislabeled garment was the basis of a separate crime. This Court determined that it was the managerial decision to misbrand the coats that was the crime and not the ministerial act of sewing the label marked '100% Cashmere.'

. . . .

". . . Defendant is not charged with a new and wrongful course of conduct each time he received money. The payments to him were all for a single act, either committed or to be committed. *It was a bribe paid in installments and not a series of separate bribes.*"[5] (emphasis added).

---

[5] The court in *Ketchum* relied to some extent on the fact that Ketchum had been the "passive recipient" of the funds deposited in his account. I do not see how a passive-active distinction is indicative of either legislative intent or whether an act is part of a course of conduct. Therefore, I do not believe that such a distinction is useful.

The *Ketchum* court also noted that some jurisdictions regard bribery payments as separate offenses under the theory that each payment is for an additional period of protection. In other words those jurisdictions find that a new agreement is entered into with each new payment. I would accept such a theory in a case where there is no evidence of an initial agreement to cover payments over

The statute under which appellant was convicted in the instant case reads in relevant part as follows: "[w]hoever shall directly or indirectly, . . . give or make any promise, contract or agreement, for the payment, . . . of any money, . . . in order to obtain or influence the . . . behavior of . . . any officer or employe of this Commonwealth, or of any political subdivision thereof, . . . is guilty of bribery . . ." 18 P.S. 4303.

The active element of the offense is clearly the "giving or making of any promise, contract or agreement," not the payment of money or other consideration. Payment was an element read into the statute by our Court in *Commonwealth v. Baker, supra.* The language of the statute most certainly does not express any intention to make one convicted of the crime be liable separately for every payment made, and it would be a violation of the Statutory Construction Act for us to construe the statute to include such an intention.[6] Mr. Justice FRANKFURTER, speaking for the Supreme Court in *Bell v. United States,* 349 U.S. 81 (1955), said: "[i]t may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment . . . . [I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction

a period of time. In the instant case, however, the trial court found that there was one initial agreement which covered all of the sixteen payments.

[6] "Penal provisions . . . shall be strictly construed . . . ." Act of May 28, 1937, P. L. 1019, art. IV, §58, 46 P.S. 558.

" '[W]hen a criminal statute calls for construction it is not the construction that is supported by the greater reason that is to prevail, but that one which, if reasonable, operates in favor of life and liberty: . . . .' " *Commonwealth v. Glover,* 397 Pa. 543, 546, 156 A. 2d 114 (Mr. Justice McBRIDE 1959), quoting *Commonwealth v. Exler,* 243 Pa. 155, 162, 89 A. 968 (1914).

into multiple offenses, when we have no more to go on than the present case furnishes." *Bell v. United States, supra* at 83-84.

Our Court is to be guided in our construction of legislative enactments by the Statutory Construction Act.[7] That Act creates a presumption "[t]hat the Legislature does not intend a result that is absurd, impossible of execution or unreasonable."[8] The absurdity of making each payment a separate crime is readily apparent. If the police detective had suggested payments every day during this sixteen week period, appellant would be liable to a maximum fine of $56,000 and 112 years imprisonment. The police would also be able to determine the maximum penalty which the defendant would face merely by making an agreement which requires many payments. This cannot be construed as the legislative intendment, particularly in light of the language of the bribery statute. The legislature is concerned with the contract or agreement to pay, not the installments with which it is carried out.

For the above reasons I would reverse the judgment of sentence of the court below and remand for resentencing consistent with this opinion.[9]

SPAULDING and CERCONE, JJ., join in this dissent.

---

[7] Statutory Construction Act, 46 P.S. 501 et seq.

[8] Act of May 28, 1937, P. L. 1019, art. IV, §52, 46 P. S. 552.

[9] I do not reach appellant's other contentions on this appeal.