UNITED STATES of America, Appellant,

v.

FORSYTHE, Robert E., Franciscus, Charles J., Blaskovich, John J., France, Edward J., Prosser, Edwin F., Snee, Edward T., Joyce, Thomas, Shanta, Michael, Thompson, George B., Mussman, John L., Alcorn, Carl W.

UNITED STATES of America, Appellant,

v.

MEYERS, Sam, Meyers, Gus, Levitt, Stephen C., Mazzei, Frank, Isaac, Michael C., Gross, Arthur a/k/a "Red", Weber, Walter, Galack, Marvin.*

Nos. 77–1400 to 77–1405, 77–1437, 77–1598 and 77–1605 to 77–1606.

United States Court of Appeals, Third Circuit.

Argued June 17, 1977.

Decided Aug. 4, 1977.

13. *See* note 2 *supra.*

* Consolidated with the following Appellees:
Robert E. Forsythe, 77–1400; Sam Meyers (two cases), 77–1401, 1598; Albert C. Pantone, 77–1402; Samuel Barbour, 77–1403; Jacob Williams, 77–1404; Regis Nairn, 77–1405; Gary Esterberg, 77–1437; Walter Weber, 77–1605; and Frank Mazzei, 77–1606.

John Rogers Carroll, Carroll, Creamer & Carroll, Philadelphia, Pa., for appellees.

Blair A. Griffith, U. S. Atty., James E. Roark, Sp. Asst. U. S. Atty., Jeffrey A. Manning, James J. West, Asst. U. S. Attys., Pittsburgh, Pa., for appellant.

William M. Acker, Pittsburgh, Pa., for appellee Alcorn.

Jon C. Botula, Pittsburgh, Pa., for appellee Prosser.

Thomas A. Livingston, Livingston, Miller, O'Malley & Clark, Pittsburgh, Pa., for appellees Forsythe, McCann, Morgan, Downey, Kumer, Bruno, Nairn.

James K. O'Malley, Livingston, Miller, O'Malley & Clark, Pittsburgh, Pa., for appellees Graham, Gus Meyers and Sam Meyers.

Robert J. Cindrich, Pittsburgh, Pa., for appellee Levitt.

Michael A. Litman, Pittsburgh, Pa., for appellee Galack.

Bernard Markovitz, Markovitz & Vitti, Pittsburgh, Pa., for appellee Pantone.

Stanley W. Greenfield, and John W. Murtagh, Jr., Greenfield & Minsky, Pittsburgh, Pa., for appellees Chesnos, Chapas, Biondi and Romano.

Robert C. Hillen, Adams, Hillen & Shoemaker, Pittsburgh, Pa., for appellees Crawshaw and Trosky.

George W. Shields, Shields & Washington, Pittsburgh, Pa., for appellees Wasko and Haney.

John H. Pope, David L. Lichtenstein, P. C., Pittsburgh, Pa., for appellee Chandler.

Richard H. Martin, Pittsburgh, Pa., for appellees Herman and Smith.

Stephen A. Zappala, Zappala & Zappala, Pittsburgh, Pa., for appellee DuPree.

Ronald A. Berlin, Pittsburgh, Pa., for appellee Esterberg.

Richard D. Gilardi, Gilardi & Cooper, Pittsburgh, Pa., for appellee Cashdollar.

Joseph M. Ludwig, Ludwig & Achman, Pittsburgh, Pa., for appellee Keisling.

David O'Hanesian, Pittsburgh, Pa., for appellee Mysels.

Vincent C. Murovich, Jr., Murovich, Reale & Fossee, Pittsburgh, Pa., for appellee Edkins.

John F. Cambest, Zappala & Zappala, Pittsburgh, Pa., for appellee Hieronimus.

Felix J. DeGuilio, Pittsburgh, Pa., for appellee DiLucenti.

Jan C. Swensen, Scott, Swensen & Scott, Pittsburgh, Pa., for appellee Barbour.

William F. Manifesto, Pittsburgh, Pa., for appellee Sheffler.

Byrd R. Brown, Pittsburgh, Pa., for appellees Owens, Goods, Whiting and Williams.

B. L. McGinley, Fisher & McGinley, Pittsburgh, Pa., for appellee McClendon.

Wendell G. Freeland, Pittsburgh, Pa., for appellee Johnson.

Harry Caplan, Pittsburgh, Pa., for appellee Bryant.

R. Mark Hunter, Pittsburgh, Pa., for appellee Moore.

Carl M. Janavitz, Pittsburgh, Pa., for appellees Zanella and Phillips.

Joseph G. Kanfoush, Janavitz, Janavitz & Kanfoush, Pittsburgh, Pa., for appellee Gillingham.

Thomas D. MacMullan, Pittsburgh, Pa., for appellee Baehr.

Emilio P. Fastuca, Tobias, Viola & Fastuca, Pittsburgh, Pa., for appellee Regrut.

John A. Knorr, Lewis & Stockey, Pittsburgh, Pa., for appellee Herman.

James A. Villanova, Pittsburgh, Pa., for appellee Adams.

Anton W. Bigman, Pittsburgh, Pa., for appellee Cicco.

Saul Davis, Pittsburgh, Pa., for appellee Batkins.

Joseph J. Pass, Jr., Jubelirer, McKay, Pass & Intrieri, Pittsburgh, Pa., for appellee LaQuinta.

Before ADAMS, VAN DUSEN and GIBBONS, Circuit Judges.

OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This appeal is from a district court order suppressing evidence obtained from a search conducted pursuant to warrant and dismissing indictments against sixty-nine out of a total of seventy-one defendants charged with conspiracy and substantive violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), Title IX of the Organized Crime Control Act of 1970, Chapter 96 of Title 18 U.S.C. § 1961 *et seq.* Because the record does not support the district court's ruling that the search warrant was invalidly executed, and because the district court judge's interpretation of RICO as applied to these facts was contrary to congressional intent in enacting the statute, as well as for all the reasons stated in this opinion, we reverse and remand.

I

In the summer of 1975, the FBI began an investigation directed at the lower level of the criminal justice system in Allegheny County, Pennsylvania. The information received indicated that a bail bond agency in Pittsburgh known as the Steve Levitt Agency had been making systematic money payments to various magistrates,[1] constables, minor Allegheny County court employees and other law enforcement officials in return for the referral to the Steve Levitt Agency of defendants who had been brought before the magistrates for the setting of bail.

On September 23, 1975, the FBI agents obtained a search warrant authorizing them to conduct a search of the agency premises for business records evidencing the above described bribery scheme. The affidavit upon which the warrant was issued contained information supplied by a confidential informant and two former employees of the Agency. The warrant was signed at 7:45 p. m. by the Chief Judge of the United States District Court for the Western District of Pennsylvania and the search of the Agency premises began at 8:12 p. m. Records reflecting the business of the Agency and evidence of the payoff-referral scheme were seized.

On July 23, 1976, three indictments charging a total of 33 defendants with violations of RICO were returned by a grand jury.[2] On August 27, 1976, three more in-

---

1. As used in this opinion, "magistrates" includes aldermen and justices of the peace.

2. Indictments Nos. 76–162 and 76–164 charged 25 present and former magistrates with violations of 18 U.S.C. § 1962(c) and conspiracy to violate § 1962(c), in violation of § 1962(d). Indictment No. 76–163 charged eight individuals who were present or former employees of the Agency with similar offenses.

Section 1962(c) provides:
"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Section 1962(d) provides:
"It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

18 U.S.C. § 1961 contains the following pertinent definitions:
"(1) 'Racketeering activity' means (A) any act or threat involving . . . bribery, . . . which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under [specified] provisions of Title 18, United States Code . . .
(3) 'person' includes any individual or entity capable of holding a legal or beneficial interest in property;
(4) 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;
(5) 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."

dictments were returned against an additional 38 defendants.[3] Numerous motions to suppress the evidence seized during the September 23rd search and to dismiss the indictments were filed. On February 22, 1977, the district court judge, having heard testimony and argument on the motions, issued a memorandum and order suppressing the evidence and dismissing the indictments against all but two[4] of the defendants. *United States v. Forsythe*, 429 F.Supp. 715 (W.D.Pa.1977).

## II

### A. *Validity of the Search Warrant*

 The initial question on this appeal is whether the search warrant was properly issued. Appellee Frank Mazzei[5] contends there was not sufficient probable cause for issuance because the facts in the affidavit on which the warrant was based were stale as of the date the warrant was signed. One informant ceased employment with the Agency in August of 1975 and the other (a former partner) had left in 1974. Mazzei argues that the informant's statements do not tend to show that the documents they described were on the Agency premises as of September 23, 1975, the date the warrant was issued.

The district court judge observed that a month long time lapse might be significant

The pattern of racketeering activities alleged in the indictments are "acts of bribery . . . in violation of the laws of the Commonwealth of Pennsylvania."

3. The individuals indicted at Nos. 76–198, 76–199 and 76–200 were present and former magistrates, constables and a minor judiciary employee. The indictments were similar in form and substance to Nos. 76–162 and 76–164. See note 2 *supra*.

4. Michael C. Isaac and Stephen C. Levitt, appellants at No. 77–1401 (3d Cir.) and defendants at Crim. No. 76–163 (W.D.Pa.).

5. The district court ruled that all of the defendants had standing to move for suppression of the evidence. We conclude that only those defendants who had a "proprietary or possessory interest" in the agency premises have standing to challenge the validity of the warrant and its execution. *Brown et al. v. United States*, 411 U.S. 223, 228, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *United States v. Hilton*,

had the items been of a volatile or fugitive nature, such as narcotics or stolen cars. 429 F.Supp. at 725. He found, however, that the Agency's business, involving bail bonds valid for considerable periods of time, was such that there was reason to believe that the documents would, in all probability, be preserved for more than one month. *Id.*

 The Supreme Court recently upheld a warrant against a similar argument in a case where there had been a three-month delay between the completion of the transactions on which the warrants were based and the ensuing search. *See Andresen v. Maryland*, 427 U.S. 463, 478 n. 9, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).[6] In the instant case, as in *Andresen*, the records sought were prepared in the ordinary course of the Agency's business and it was reasonable to believe that they would be maintained there for a period of time of over one month. Moreover, the agents had reason to believe that the Agency had been conducting its bribery operations over a five-year period, and there was no reason to believe that this operation had ceased. We hold, therefore, that there was no error in the district court's finding that the warrant was properly issued.

### B. *Execution of the Search Warrant*

The district court held that the evidence seized during the search must be suppressed

534 F.2d 556, 563–64 (3d Cir. 1976) *cert. denied*, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91. Thus, Michael Isaac, the present owner of the agency, and Frank Mazzei who is alleged to be a "silent partner" in the agency have standing to move for suppression. *See also Mancusi v. DeForte*, 392 U.S. 364, 367–68, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1967); *United States v. West*, 453 F.2d 1351 at 1354–55 (3d Cir. 1972). Defendants Frank Mazzei and Stephen C. Levitt appear to have standing under *Mancusi* and *West*.

6. A brief delay before issuance of the warrant may preclude an inference of probable cause under some circumstances, while in others, a relatively long delay may not prevent such an inference. *See, for example, United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973); *Bastida v. Henderson*, 487 F.2d 860, 864 (5th Cir. 1973); *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972).

because the search warrant was invalidly executed. He so concluded because the warrant stated that the search was to be conducted "in the daytime" and it was undisputed that the search began at 8:12 p. m. 429 F.Supp. at 723.

■ *Federal Rule of Criminal Procedure* 41 governs searches and seizures in the federal system. Section (h) of Rule 41 provides that "the term 'day-time' is used in this rule to mean the hours from 6:00 a. m. to 10:00 p. m. according to local time." It is plain that a search beginning at 8:12 p. m. is a daytime search within the meaning of Rule 41(h).

The district court further found that the warrant was invalidly executed because the search was conducted in an "unreasonable, surreptitious and clandestine manner." This description is not supported by the record. The FBI agents were admitted to the Agency premises by the building security guard after exhibiting the warrant to him and after the guard, pursuant to the agents' instructions, had notified Michael Isaac that a search was being conducted.[7] The record indicates that Mr. Isaac arrived at the Agency about an hour later. Agent Vidovich testified that:

> "Approximately one hour after we began searching, Mr. Levitt and Mr. Isaac arrived, whereupon, we identified ourselves to them and had a short discussion, showing them our search warrant and the fact that Judge Weber had signed it and told them, generally what we were going to do."

On January 4, 1977, Isaac testified:

**7.** At the suppression hearing conducted on December 7, 1976, Special Agent Joseph W. Vidovich testified:

> "Q. All right would you tell us, please, then, sir, what you did and how you executed that search warrant?
> "A. After obtaining the warrant from Judge Weber I proceeded to my office, met with several other agents, explained to them what had transpired, and we proceed to the location as described on the warrant. When we arrived at the Lawyers Building, we were met by a guard, a security guard. I believe his name was Donald Dishong. We showed Mr. Dishong that we had a warrant for the

> "Q. Now, you do recall, do you not, the evening of the search?
> "A. Yes. About five minutes after eight the security guard called me at my house.
> "Q. The security guard from where?
> "A. For—for the Lawyers Building.
> * * * * * *
> "Q. O.K. Now the security guard called you. Did you go to the office?
> "A. No, excuse me, the answering service called me and told me "the security guard wanted you urgent. Call the security guard in your building; urgent."
> "Q. O.K.
> "A. The answering service called me. I am sorry. O.K. I called the security guard. He say, 'Michael, some people here—some FBI people want to get to your office.' I say, 'Go ahead, That's ok.'
> * * * * * *
> "The Court: Did you say that you told the security guard that it was all right for the FBI men to go ahead?
> "The Witness: Yes sir, I did.
> * * * * * *

By Mr. Scarlata:

> "Q. Did he indicate whether or not they had a warrant or anything like that?
> "A. They told me they got some paper a warrant. Yea, I think so.
> "Q. Did the security guard tell you, is my question?
> "A. I don't remember that. But he told me there was some people with paper here and they want to get to my office."

premises at 509. We asked him if he would, please, contact the individuals who were renting that space, specifically the owner of SCL Insurance Services.
> "Q. SCL Insurance Services?
> "A. Correct.
> "Q. O.K.
> "A. (continuing)—We then asked Mr. Dishong if he could provide us with a pass key to enter the premises.
> * * * * * *
> "The Witness:
> (continuing)—We were taken by Mr. Dishong to the 509 office. He let us in with a pass key, whereupon, we began our search."

■ The Constitution condemns only unreasonable searches. This search was instituted and conducted in a reasonable manner. *See Mengarelli v. United States,* 426 F.2d 985, 987–88 (9th Cir. 1970).

■ The appellees assert that the search was unconstitutional because the agents seized some items not listed in the search warrant.[8] They argue that because of this, all the evidence seized should be suppressed. The district court implicitly rejected this argument and correctly so. *See Andresen v. Maryland, supra,* 427 U.S. at 482 n.11, 96 S.Ct. 2737. The Supreme Court has stated that the exclusionary rule has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons. *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Assuming *arguendo* that the seizure of the items not listed in the warrant was illegal, this does not justify suppression of highly probative evidence consisting of those documents and records which were legally seized pursuant to a valid warrant. *See Stone v. Powell, supra,* 428 U.S. at 485, 96 S.Ct. 3037.

### III

#### A. The Statute of Limitations

■ The court below granted motions to dismiss indictments against some defendants because the indictments were returned after the state statute of limitation had expired.[9] We hold that the applicable period of limitations is governed by federal, rather than state, law.[10] Title 18 U.S.C. § 3282 provides that:

"Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed."

Had Congress intended state statutes of limitations to apply to a federal criminal statute it would have so stated. An examination of the legislative history of Title IX of the Organized Crime Control Act, Title 18, U.S.C., Section 1961, *et seq.,* reveals that the original proposed legislation now embodied in Title 18, U.S.C., Section 1962 included a proposed subsection (e). Proposed Section 1962(e) provided that:

"A violation of this section shall be deemed to continue so long as the person who committed the violation continues to receive any benefits from the violation." S.Rep. 91–617 (1969).

The legislative history of proposed Section 1962(e) is instructive:

"Subsection (e) provides that a violation is a continuing offense so long as one of the acts in the pattern produces a benefit to the offender. While the general criminal statute of limitations is five years, 18 U.S.C., Section 3282, certain offenses which produce a continuing result are also treated as continuing offenses. Conspiracy is such an offense. *See United States v. Borelli,* 336 F.2d 376 (2d Cir. 1964), *cert. denied,* 379 U.S. 960, [85 S.Ct. 647, 13 L.Ed.2d 555] (1965); *see also, Bramblett v. United States,* 231 F.2d 489 (9th Cir. 1958)."

For another statutory provision making an offense continuing, see 18 U.S.C. § 3284.

The fact that proposed § 1962(e) was not enacted as part of RICO indicates that Congress intended to rely on 18 U.S.C. § 3284.

8. The warrant authorized the seizure of, *inter alia,* completed bail bond application forms, books, records, cancelled checks, correspondence and any related papers. In addition to taking almost of the Agency's records, the agents removed a metal safe which contained jewelry, cash, receipts and cancelled checks. The jewelry and cash were subsequently returned along with papers which had been determined to be irrelevant to the bribery operation.

9. Had the defendants been indicted under state law, 19 P.S. § 211 (1939) would be controlling. Section 211 provides, *inter alia,* a two-year period within which an indictment must be brought beginning with the time a public official or employee leaves office or employment.

10. It is clear that the counts charging conspiracy under 18 U.S.C. § 1962(d) are governed by the federal statute of limitations. *See* 18 U.S.C. § 3282.

█ RICO is a federal law proscribing various racketeering acts which have an effect on interstate or foreign commerce. Certain of those racketeering, or predicate acts violate state law and RICO incorporates the elements of those state offenses for definitional purposes. State law offenses are not the gravamen of RICO offenses. RICO was not designed to punish state law violations; it was designed to punish the impact on commerce caused by conduct which meets the statute's definition of racketeering activity. To interpret state law offenses to have more than a definitional purpose would be contrary to the legislative intent of Congress and existing state law.[11]

### B. *The Scope of RICO*

The district court granted motions to dismiss the indictments against all the magistrate defendants and the constable defend-ants because, as he interpreted § 1962(c) of RICO, the independent status of these defendants removed them from the statute's purview. Section 1962(c) provides that:

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly in the conduct of such enterprises' affairs through a pattern of racketeering activities . . . ."

The district court held that the magistrates and constables were not "associated" with the enterprise within the meaning of the statute, concluding that § 1962(c) covers only those "inside" the enterprise rather than "outside". 429 F.Supp. at 725–26.

█ We note at the outset that Congress specifically directed that the provisions of RICO "shall be liberally construed

---

11. *See United States v. Fineman,* Crim.No. 76–36, 434 F.Supp. 189 (E.D.Pa.1977) wherein the defendant argued that since the Pennsylvania statute of limitations had run on the alleged bribery and extortion acts, the acts were not indictable under RICO. Judge Fullam stated:

"I perceive no merit in this argument. The RICO statute is concerned with defining the predicate offenses. An offense which, when committed, would have been indictable under Pennsylvania law is within the statutory definition. Any other construction would render the definition of 'pattern' essentially meaningless, and would render state statutes of limitations paramount over the federal limitations provisions. I therefore deem it unnecessary to consider whether prosecution for the state offenses would have been time-barred as of the date of the federal indictment." *Id.* at 194.

Additional support for our conclusion is found in case law interpreting similar statutes. In *United States v. Revel,* 493 F.2d 1 (5th Cir. 1974), the appellants challenged the incorporation of state gambling statutes into Title 18 United States Code, Section 1955, as an element of that federal offense, arguing that: "A violation of state law is an element of the offense under § 1955. The Alabama statute of limitations for the crime alleged in the indictment expired before the date of the indictment. Therefore, no violation of state law existed at the time of the indictment, and because there was no state law violation, there could not have been a federal law violation."

Rejecting appellant's contention, the Court stated:

"Certainly Congress could have incorporated state statutes of limitations into the federal statutes, but we cannot perceive any indication that it has done so . . . To the contrary, Congress, in passing the 1970 act, emphasized the federal interest in dealing with organized crime because of the influence of organized criminal activities on the economy, security and general welfare of the entire country. Congress excluded local, transitory gambling activities from the scope of the law, leaving their regulation to state and local authorities, but it asserted federal jurisdiction over racketeering and large-scale gambling activities. In view of this bifurcated system of enforcement, it seems reasonable to use federal standards in enforcing the federal law. This is proper for § 1955, just as it is for § 1952. *United States v. Cerone,* 452 F.2d 274 (7th Cir. 1971), *cert. denied,* 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972)." *Revel, supra* at 3.

The appellants in *Cerone, supra,* made a similar argument with regard to the Travel Act, 18 U.S.C. § 1952. The argument was again rejected. See 452 F.2d at 286–88.

It is noted that 18 U.S.C. § 1961 *et seq.,* and 18 U.S.C. § 1955 (the statute interpreted in *Revel, supra* ) were both part of the Organized Crime Control Act of 1970. Statutes enacted together within the Organized Crime Control Act of 1970 have been construed *in pari materia. See United States v. Becker,* 461 F.2d 230 (2d Cir. 1972).

to effectuate its remedial purposes." [12] The Courts have interpreted RICO in accordance with this Congressional mandate.[13] The legislative intent was to make RICO violations dependent upon behavior, not status. *See United States v. Mandel,* 415 F.Supp. 997, 1018 (D.Md.1976). Section 1962(c) prohibits *any* person from engaging in the proscribed conduct, and defines the term "associated with" as direct or indirect participation in the conduct of the enterprise. At the least, the activities of the magistrates and constables as described in the indictments constitute indirect participation in the Agency's affairs. Indeed, a strong argument may be made that the allegations in the indictments, if true, rendered the defendants employees of the Agency who participated directly in its affairs.[14] This is so because without the referrals from the magistrates and the assistance of the constables, the Agency's business and its income would have been less than it was during the period from 1970 to 1975. Moreover, it is alleged that these defendants were paid directly by the Agency in return for referral of clients, just as salesmen or agents would be paid a commission for like services. Under either viewpoint, we hold that the activities specified an offense under § 1962(c) and we reverse the dismissal of the indictments against the magistrate and constable defendants.[15]

## C. The Role of State Law in RICO Offenses

The district court dismissed the indictments against the former employees and owners of the Agency to the extent that they alleged acts occurring prior to June 6, 1973. The district judge reasoned that since the former Pennsylvania bribery statute [16] provided for a term of imprisonment

---

**12.** Pub.L. 91–452, Title IX, Section 904, 84 Stat. 941.

**13.** *See, e.g., United States v. Altese,* 542 F.2d 104 (2d Cir. 1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977); *United States v. Campanale,* 518 F.2d 352 (9th Cir. 1975), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

**14.** Five of the six indictments charged sixty-three "magistrates and minor ministerial officials (such as constables)" with being "associated with" an enterprise, and that they:

". . . did knowingly conduct and participate directly and indirectly in the conduct of the affairs of the Levitt Agency through a pattern of racketeering activities, which activities involved acts of bribery whereby the [respective] defendants . . . would and did solicit, accept and receive bribes in the form of money for the purpose of influencing their official behavior and as consideration for the exercise of their official discretion in judicial proceedings, in violation of the laws of the Commonwealth of Pennsylvania, to wit, Title 18, Purdon's Pennsylvania Statutes, Section 4303, which was recodified effective on or about June 6, 1973, as part of Title 18,

Purdon's Pennslyvania Statutes, Section 4701." (194A, 283A, 324A, 339A, 363A)

All five indictments also allege that:

"The pattern of racketeering activity as defined in Title 18, United States Code, Section 1961(1)(A) included the state offenses involving acts of bribery committed by the defendants . . ." (194A, 283A, 324A, 339A, 363A)

The district court found that the constables "have no range of official discretion to exercise . . ." and dismissed the indictments against them for that reason. 429 F.Supp. at 726. That, however, is not dispositive of the constables' status as defendants. The indictments relating to the constables charged that the magistrate defendants "were assisted from time to time by the [constable] defendants . . ." (319A, 333A, 358A) Additionally, the affidavit for search warrant reflects that Mary Hupert "would give the cash payments and envelopes to the magistrates' constables if the magistrate was not available to come to the office." (179A) *See* n.15 *infra.*

**15.** The district court dismissed the indictments against the constables for the further reason that they were not vested by law with discretion and could not, therefore, be guilty of improper exercise of discretion. Such a factor would certainly not affect the charge of conspiracy. Nor is it dispositive of the substantive charge, since the indictment need not specifically charge aiding and abetting in order to support a conviction for aiding and abetting. The indictment must be read as if 18 U.S.C. § 2 were embodied in each count. *United States v. Ehrenberg,* 354 F.Supp. 460, 463 (E.D.Pa.1973), *aff'd,* 485 F.2d 682 (3d Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111. See *United States v. Provenzano,* 334 F.2d 678, 691 (3d Cir. 1964).

**16.** 18 P.S. § 4303, recodified June 6, 1973 as 18 Pa.C.S.A. § 4701.

not exceeding one year for one convicted of offering a bribe (a bribor),[17] such offenses were not cognizable under RICO, which provides that the state offense must carry a penalty exceeding one year's incarceration.[18]

■ We note that prior to the recodification of the state bribery statute, 18 P.S. § 4304 punished a person engaging in "corrupt solicitation" by imprisonment of not more than two years.[19] Following the "occupation or profession" of corrupt solicitation was also punishable by imprisonment not exceeding two years.[20] The indictment at Criminal No. 76–163 charged the former employees of and partners in the Agency with the practice or occupation of corrupt solicitation in violation of 18 P.S. § 4305 and, accordingly, states a predicate offense under § 1961(1) of RICO for those acts occurring prior to June 3, 1973.

■ We note further that by systematic paying of bribes to public officials and employees, those making payments committed "act[s] . . . involving . . . bribery" within the meaning of 18 U.S.C. § 1961(1)(A). The word "involving" utilized in the statutory definition of racketeering activity is broad enough to reach the conduct of owners and employees of a corrupt enterprise. The legislative history of 18 U.S.C. § 1961(1)(A) specifically states that "State offenses are included by generic designation." [21] This statement manifests the legislative intent to incorporate the Supreme Court's holding in *United States v. Nardello,* 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969), into the RICO statute. *Nardello* stands for the proposition that alleging a state violation which falls within the generic category of the predicate offense is adequate to charge a violation of the Travel Act.[22] The test for determining whether the charged acts fit into the generic category of the predicate offense is whether the indictment charges a type of activity generally known or characterized in the proscribed category, namely, any act or threat involving bribery. See 18 U.S.C. §§ 1961(1) and 1962(c) quoted at note 2 above. The Court stated that ". . . the inquiry is not the manner in which States classify their criminal prohibitions but whether the particular state involved prohibits the extortionate activity charged." 393 U.S. at 295, 89 S.Ct. at 539. We conclude that under former Pennsylvania law there were several offenses fitting within the generic category of bribery [23] and carrying prison terms in excess of one year.

17. The party convicted of accepting a bribe was subject to a term of imprisonment of up to five years.

 The current statute, 18 Pa.S.A. § 4701, effective June 6, 1973, provides a term of imprisonment of up to seven years for both the party convicted of paying and the party convicted of receiving a bribe.

18. 18 U.S.C. § 1961(1). *See* note 2 *supra.*

19. 18 P.S. § 4304 entitled 'corrupt solicitation' provided that:
 "Whoever, directly or indirectly, by offer or promise of money, office, appointment, employment, testimonial or other thing of value, or by threats or intimidation, endeavors to influence any member of the General Assembly, State, county, election, municipal or other public officer, in the discharge, performance, or nonperformance of any act, duty or obligation pertaining to such office, is guilty of corrupt solicitation, a misdemeanor, and on conviction thereof, shall be sentenced to pay a fine not exceeding one thousand dollars ($1,000), or to undergo imprisonment not exceeding two (2) years, or both."

20. 18 P.S. § 4305 entitled 'practice or occupation of corrupt solicitation' provided:
 "Whoever follows the occupation or practice of soliciting members of either House of the General Assembly, or public officers of the State or of any political subdivision thereof, to corruptly influence their official action, is guilty of the practice of corrupt solicitation, a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine not exceeding one thousand dollars ($1,000), or to undergo imprisonment not exceeding two (2) years, or both."

21. 1970 U.S.Code, Cong. & Admin.News at 4032.

22. 18 U.S.C. § 1952 (Part of Chapter 95 of Title 18).

23. The generic description of bribery is "conduct which is intended, at least by the alleged briber, as an assault on the integrity of a public office or an official action." *United States v. Dansker,* 537 F.2d 40, 48 (3d Cir. 1976).

These were common law bribery[24] and the above-mentioned offenses of corrupt solicitation and the practice of corrupt solicitation.[25] Indeed, when the statute was recodified, all of these offenses were included in the new statute.[26] For these reasons, we conclude that the indictments charge offenses under 18 U.S.C. § 1962(c) and (d).[27]

IV

In conclusion, we hold that the district court erred in suppressing the evidence and dismissing the indictments. We find the indictments to be sufficient, both on the conspiracy and the substantive counts, and reverse their dismissal by the district court. The case is remanded to the district court for further proceedings in accordance with this opinion.

24. *See United States v. Fineman,* 434 F.Supp. 189 at 194 (E.D.Pa. Crim.No. 77–36, 1977). *See also Commonwealth v. Bausewine,* 156 Pa.Super. 535, 541, 40 A.2d 919, 922 (1945). In Pennsylvania, the crime of bribery is indictable at common law, *Commonwealth v. Brown,* 23 Pa.Super. 470, 492 (1903), and an indictment which defectively charges a statutory offense can be held valid as charging common law bribery. *Commonwealth v. Benedict,* 114 Pa. Super. 183, 186–87, 173 A. 850 (1934); *Commonwealth v. Brown, supra.*

25. We note that prior to the 1973 recodification of 18 P.S. §§ 4303, 4304 and 4305, the State courts interpreted bribery and corrupt solicitation as two separate offenses. *See Commonwealth v. Clark,* 238 Pa.Super. 444, 447–49, 357 A.2d 648, 650–651 (1976); *Commonwealth v. Baker,* 146 Pa. 559, 561–62, 22 A.2d 602, 603 (1941). *Cf. Commonwealth v. Clark,* 220 Pa. Super. 326, 286 A.2d 383 (1971). Appellees argue that it follows from this that this Court must find that corrupt solicitation does not fall within the generic definition of bribery. In light of the Supreme Court's mandate in *Nardello, supra,* and our own decision in *Dansker,* n.23, *supra,* we reject this contention.

26. 18 Pa.C.S.A. § 4701(a) which took effect on June 6, 1973, provides as follows:
 "A person is guilty of bribery, a felony of the third degree, if he offers, confers, offers or

agrees to confer upon another, or solicits, accepts or agrees to accept from another:
 (1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient;
 (2) any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by the recipient in a judicial, administrative or legislative proceeding; or
 (3) any benefit as consideration for a violation of a known legal duty as public servant or party official."
 A felony of the third degree is punishable by imprisonment up to seven years. 18 Pa.C.S.A. § 106(b)(4).

27. The many cases rejecting appellees' contention that state law controls when state offenses are incorporated by reference in a criminal statute include *United States v. D'Amato,* 436 F.2d 52, 54–5 (3d Cir. 1970); *United States v. Polizzi,* 500 F.2d 856, 869–873 (9th Cir. 1974); *United States v. Smaldone,* 485 F.2d 1333, 1343 (10th Cir. 1973); *United States v. Palmer,* 465 F.2d 697, 699–700 (6th Cir. 1972), *cert. denied,* 409 U.S. 874, 93 S.Ct. 119, 34 L.Ed.2d 126 (1972); *United States v. Roselli,* 432 F.2d 879, 886–88 (9th Cir. 1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1970).