**UNITED STATES of America, Plaintiff,**

v.

**Angel TORRES LOPEZ, Defendant.**

**Crim. No. 86–358 (JP).**

United States District Court,
D. Puerto Rico.

Feb. 20, 1987.

As Corrected April 15, 1987.

H. Manuel Hernández, Asst. U.S. Atty. Hato Rey, Puerto Rico, for plaintiff.

Armando Rivera-Carretero, Hato Rey, Puerto Rico, for Alejo Maldonado Medina.

Luis F. Abreu Elías, Hato Rey, Puerto Rico, for Hector Acevedo Ramos.

Blas C. Herrero, Jr., Hato Rey, Puerto Rico, for Angel Torres Lopez.

Miriam Ramos Grateroles, Bayamón, Puerto Rico, for Luis Ramos Grateroles.

Francisco M. López-Romo, San Juan, Puerto Rico, for Luis Gomez Ferpeiro.

Edwin Quiñones, Hato Rey, Puerto Rico, for Guillermo Torres Verdu.

George López-Keelan, Hato Rey, Puerto Rico, for Cesar Caballero Rivera.

Juanita Treviño, Bayamón, Puerto Rico, for Hiram Vazquez Negron.

Gabriel Hernández, San Juan, Puerto Rico, for Eugenio Rivera-Figueroa.

## OPINION AND ORDER

PIERAS, District Judge.

On June 26, 1986, a Grand Jury returned a five-count indictment, charging nine defendants with one substantive and one conspiracy violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sections 1962(c) and 1962(d), substantive and conspiracy Hobbs Act violations, 18 U.S.C. section 1951, and also charging the above-named defendant with Obstruction of the Due Administration of Justice, 18 U.S.C. section 1503. This indictment was superseded on November 24, 1986, and contained the identical charges against the same defendants, but included only corrections of typographical errors.

The indictment covered a twelve-year period of crimes beginning in 1973 and lasting until 1985 during which murders, contract murders, kidnappings, contract arson, armed robbery, and theft from interstate commerce were charged against members of this enterprise and others. Throughout the investigation of these crimes, the identities of these defendants were discovered. Some became witnesses for the government after federal convictions on kidnapping charges of Mario Consuegra in 1982. After the return of the indictment, eight of the nine defendants pled guilty to some counts in the indictment, and one pled as late as after the empanelling of the anonymous and sequestered jury. Before the Court accepted any of these pleas, the defendants placed on the record an account of their pillage. In their guilty pleas, these

defendants recounted in cold-blooded detail their involvement in each of these charged crimes. On the witness stand they recited their individual participation in the eighteen charged racketeering acts and the 124 overt acts.

Each pled guilty on various dates before the trial. They all discussed the names of their co-conspirators, and what they did, and through each story, all eight were clearly implicated in this enterprise. What made these crimes all the more heinous and shocking was that the enterprise was headed by an officer in the Criminal Investigation Corps of the Police of Puerto Rico, defendant Alejo Maldonado Medina. Other police officers served as triggermen, robbing at least one drug dealer of his ill-gotten booty before gunning him down; kidnapping, robbing, and murdering businessmen who came to Puerto Rico to engage in the thriving jewelry trade of this region; burning the body of one such ill-starred merchant in order to hamper the investigation of his disappearance; torching businesses to claim insurance proceeds; even pulling off an armed robbery of their own, the Police Cooperative Savings and Loan. Ruthless jewelers, wholly governed by the gleam of gold, helped select targets for the police and shared in the spoils.

A lone defendant, Angel Torres López, an attorney and former police investigator, went to trial. In the small hours of Sunday, February 8, 1987, after an eleven day trial, the jury acquitted the defendant of count five of the indictment, obstruction of the due administration of justice, but convicted him of counts one and two, the substantive RICO and RICO conspiracy counts, respectively. Along with the general verdict form, the jury also returned a special verdict form, its use agreed to by the parties in open court, which detailed each racketeering act with which the defendant was allegedly directly involved. The jury found the defendant implicated in racketeering act one, the armed robbery of Francisco Rivera Petrie in October 1973, and racketeering act five, the contract arson of Riviera Casuals in December 1974. The jury found that the defendant was not directly involved in racketeering acts twelve (a) through twelve (c), which involved the contract murder of Luis Rolón in 1979, and not directly involved in racketeering acts eighteen (a) and eighteen (b), which involved the obstruction of justice by interference with a government witness in 1985.[1] The jury was unable to reach a verdict on defendant's participation in the remaining racketeering acts he was alleged to have participated in directly: numbers four (contract arson in 1974), seven (armed robbery in 1976), and eleven (murder in 1979). The jury was polled and each member answered that, as to those counts and racketeering acts about which they had made explicit determinations, it was their unanimous decision.

Defendant's counsel rose to argue under Fed.R.Crim.Pro. 29(c) that because the jury found that defendant was not directly implicated in any racketeering act later than 1974, that the statute of limitations applicable to the RICO Act is five years from the date of the 1986 indictment, and therefore, the Court was divested of jurisdiction, and the jury's general verdict of guilty on both the substantive and conspiracy RICO counts is rendered a nullity. Argument lasted until approximately 2:30 a.m., at which time the Court ordered the parties to submit briefs on this matter.

We examine first the substantive RICO count, and then the RICO conspiracy count.

## I. SUBSTANTIVE RICO COUNT

Defendant was charged in Count One, the substantive RICO count, with violation of 18 U.S.C. section 1962(c). That section reads:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

---

**1.** Exoneration on this allegation, of course, was consistent with the jury verdict on count five of the indictment, as both charges sprang from the same indictment.

racketeering activity or collection of unlawful debt.

Our inquiry focuses only on the elements of employment or association with the enterprise, direct or indirect conduct of or participation in the enterprise, and whether that conduct or participation, if any, was through a pattern of racketeering activity. The ultimate issue we must determine is whether the jury's conviction stands in light of the statute of limitations.

### A. *The Jury's Verdict*

It must first be stated that, after receiving instructions on the elements of a substantive RICO offense, the jury returned a verdict of guilty. The jury found that the defendant was in fact associated with an enterprise that did exist, that the affairs of the enterprise did affect interstate commerce, and that the defendant, directly or indirectly, did conduct or participate in the affairs of the enterprise through a pattern of racketeering activity. Defendant asks us to disturb this verdict, arguing that the jury found the defendant implicated in no particular racketeering act later than 1974.

### B. *Statute of Limitations*

 The RICO Act does not contain its own statute of limitation. The general five-year statute of limitation applicable to non-capital offenses contained in 18 U.S.C. Section 3282 therefore applies to a RICO prosecution. *See United States v. Walsh,* 700 F.2d 846, 851 (2d Cir.), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *United States v. Bethea,* 672 F.2d 407 419 (5th Cir.1982); *United States v. Forsythe,* 560 F.2d 1127, 1134 (3d Cir.1977). The question before the Court is whether to establish a substantive RICO conviction the government need prove that the defendant committed one of his two requisite racketeering acts within five years of the indictment, or if the government need prove that the enterprise, with which the defendant was associated in fact and in which the defendant participated through a pattern of racketeering activity, committed a racketeering act within five years of the indictment. We hold that the statute of limitation applies not to the last racketeering act committed by Angel Torres, but the last racketeering act in which the enterprise was involved. The last act in which the enterprise was involved was the Consuegra kidnapping case in 1982. That act was committed within five years from the date of the indictment.

Our holding today is in accord with the plain reading of the RICO Act. In order to sustain a conviction under section 1962(c), the government must show at trial racketeering acts that were part of the pattern of racketeering activity. Section 1961(5) defines "pattern of racketeering activity" as

> at least two acts of racketeering activity, one of which occurred after the effective date of this chapter (October 1, 1970) and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. § 1961(5). The jury was given explicit instructions as to the meaning of "pattern of racketeering activity." As noted above, the government satisfied its burden of establishing a pattern of racketeering activity by proving to the jury that the defendant was implicated in two racketeering acts that occurred in 1973 and 1974.

This case is brought not against Angel Torres Lopez as an individual defendant, but against all defendants as members of a criminal enterprise. The fifty-seven page indictment lists eighteen racketeering acts under the RICO substantive count, and 124 overt acts in the RICO conspiracy count. The RICO Act was enacted as Title IX of the Organized Crime Control Act of 1970 precisely to advance "the successful prosecution of organized crime." H.R.Rep. No. 1549, 91st Cong., 2d Sess. (1970) Individual Views of Mr. David W. Dennis of Indiana, *reprinted in* 1970 U.S.Code Cong. and Admin.News 4007, 4073. *See also* Congressional Statement of Findings and Purpose, Pub.L. No. 452, 84 Stat. 922, *reprinted in* 1970 U.S.Code Cong. and Admin.News 1073. The major thrust of the Act is to provide a more efficient means of combatting organized crime as an enterprise, instead of

attacking organized crime through its individual members.

The nature of the activities that the RICO Act outlaws " 'clearly contemplates a prolonged course of conduct.' " *United States v. Field,* 432 F.Supp. 55, 59 (S.D.N.Y.1977), *aff'd mem.* 578 F.2d 1371 (2d Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978), *quoting Toussie v. United States,* 397 U.S. 112, 120, 90 S.Ct. 858, 863, 25 L.Ed.2d 156 (1970). The defendants are not indicted for their individual crimes; they are indicted because they belonged to and participated in the criminal enterprise outlawed by the statute. The enterprise, however, no matter how long it victimizes the citizenry, cannot be brought before the courts: only the participants can. It is the participants that are on trial for their involvement with the enterprise and they would not be before us without the existence of the enterprise. But the statute of limitations cannot sensibly run to each defendant when the enterprise acts at many different times in many different ways.[2] It must be applied to the enterprise itself.

■ Section 1962(c) requires that racketeering acts be committed by members of the enterprise. For prosecutions under 18 U.S.C. § 371, the statute of limitation begins to run from the last overt act committed by any member of the group charged. *United States v. Borelli,* 336 F.2d 376, 384–85 (2d Cir.1964) *cert. denied,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965). *See also United States v. Persico,* 621 F.Supp. 842, 872–73 (D.C.N.Y.1985). By use of analogy, Judge Lasker held that "the statute of limitations for violations of [§ 1962(c)] runs from the date of the last alleged act of racketeering activity." *United States v. Field,* 432 F.Supp. 55, 59 (S.D.N.Y.1977), *aff'd mem.* 578 F.2d 1371 (2d Cir.1978), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978). The Court in *Persico, supra,* in a pre-trial motion to dismiss, ruled that if there were no proof at trial "of any acts by any member of the enterprise within the limitations peri-

od," the defendant could renew his motion to dismiss. 621 F.Supp. at 873.

Though *Persico* involved pre-trial motions to dismiss, the point of law employed there is applicable to our case. That is, the statute of limitations runs from the date of the last predicate act alleged and committed by any member of the enterprise. The last predicate act committed by members of this enterprise was the kidnapping of Mario Consuegra in 1982. We hold then, that for the government to win a conviction under RICO, it need show beyond a reasonable doubt that members of the enterprise committed a racketeering act within five years from the date of the indictment.

To hold otherwise leads to an absurd result. Under the defendant's argument, if the evil and associated-in-fact gang of Loki, Circe, Yago, Mephistopheles, and Dr. Moriarty rampaged after the effective date of the act, committing all manner of racketeering acts, each member of the gang could be indicted only within five years of their last personal racketeering act. Imagine a scenario where the gang is indicted in 1987 on a substantive RICO charge for the following activities: Loki committed arson in 1971 and 1980, got Circe's agreement to engage in slave trafficking in 1972 and again in 1981, Loki persuaded Yago to obstruct justice in 1973 and 1981, Loki and Circe received Mephistopheles' promise to extort innocents in 1974 and 1985, and finally, Loki, Yago, and Mephistopheles convinced Dr. Moriarty to thieve from interstate commerce in 1976 and 1985. Under defendant's argument, there are five separate substantive RICO offenses here, because no defendant was "directly" involved in any two crimes except their own, and in any case, Loki, Circe, and Yago must be exonerated as having committed no racketeering act within five years of indictment. It is, however, precisely this kind of organization, whose activities involve many people and many crimes over long periods of time, that Congress meant to outlaw when it passed the RICO Act.

---

2. Indeed, even Alejo Maldonado Medina, the most notorious criminal this Island has ever produced, was not implicated in each and every racketeering act alleged in the indictment.

Defendant's argument, however, ignores two important points. First, the statute clearly reads "to conduct or participate, directly or indirectly." Second, as to the substantive RICO count, defendant was accused of "aiding and abetting" the activities of the enterprise. Although defendant argues that his lack of direct participation in the Consuegra kidnapping acquits him, he ignores the statute, the indictment, and the jury instructions that permit his conviction for indirect participation through aiding and abetting. His association in fact with the RICO enterprise, and his participation in some of the enterprise's activities, aided and abetted the enterprise that kidnapped Consuegra. The jury, who faithfully sat through eleven long days of trial and attentively received the Court's instructions on the law on these matters, understood all this fully before returning a guilty verdict on the substantive RICO count.

The jury's verdict shall stand.

## II. RICO CONSPIRACY

■ The motion for acquittal of the RICO conspiracy count is likewise based on the fact that the defendant committed no racketeering act within five years of the indictment. In order to prove a RICO conspiracy, the government must show beyond a reasonable doubt that there was an agreement to violate the RICO Act, that the defendant joined the conspiracy, and that at least one overt act was committed in furtherance of the conspiracy. The statute of limitations on a conspiracy starts to run after the last overt act of any of the conspirators. *Grunewald v. United States*, 353 U.S. 391, 396–97, 77 S.Ct. 963, 969–70, 1 L.Ed.2d 931 (1957). Overt acts, as well as substantive crimes, committed by any one conspirator are attributable to all other conspirators after they join. *Pinkerton v. United States*, 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946); *United States v. Fusaro*, 708 F.2d 17, 21 (1st Cir.), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983). The jury was carefully instructed on the matter of conspiratorial liability. The government put on proof of the conspiracy

to violate the RICO Act that the defendant willfully and knowingly joined this conspiracy with the intent to violate the RICO Act, and that overt acts continued up to and including the Consuegra kidnapping. The jury, after weighing this evidence, found the defendant guilty. The jury's verdict must stand unless Torres somehow extricated himself from the RICO conspiracy.

■ Defendant argues that lack of any proof of his participation in racketeering acts within five years of indictment acquits him. The law of conspiracy, however, is clear that " 'mere cessation of activity in furtherance of the conspiracy does not constitute withdrawal.' " *United States v. Dunn*, 758 F.2d 30, 37 (1st Cir.1985), *quoting, United States v. Phillips*, 664 F.2d 971, 1018 (5th Cir.1981), *cert. denied* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). Defendant's "mere cessation of activity" cannot serve then to overturn the jury's verdict. Neither can he claim that he withdrew from the conspiracy. In order to show withdrawal, the defendant must have acted affirmatively to either defeat or disavow the purpose of the conspiracy. *United States v. United States Gypsum Co.*, 438 U.S. 422, 464–65, 98 S.Ct. 2864, 2887, 57 L.Ed.2d 854 (1978). The defense presented no evidence whatsoever to this effect and the Court was therefore not required to instruct the jury on this withdrawal theory. *United States v. Capone*, 683 F.2d 582, 589 (1st Cir.1982). In light of this, the Court has no reason to disturb the jury's verdict.

## III.

For the reasons elucidated above, defendant's motion for acquittal is DENIED on both counts.

IT IS SO ORDERED.

## ORDER

The defendant was placed on bond when the legal status of the jury's conviction of defendant was questioned. Pursuant to the Court's Opinion and Order of this date, that status is clarified. Accordingly, bond

is REVOKED, a warrant for the defendant's arrest and an order for his commitment shall issue immediately. Sentencing is SET for Tuesday, April 7, 1987, at 9:30 a.m.

IT IS SO ORDERED.