**UNITED STATES of America**

v.

**Richard A. DAVIS, Appellant.**

**No. 77–2263.**

United States Court of Appeals, Third Circuit.

Argued March 28, 1978.

Decided May 24, 1978.

Richard C. Snelbaker, Snelbaker, McCaleb & Elicker, Mechanicsburg, Pa., for appellant.

S. John Cottone, U. S. Atty., Harrisburg, Pa., David Dart Queen, Sp. Asst. U. S Atty., Baltimore, Md., for appellee.

Before ALDISERT, GIBBONS, HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Richard A. Davis, former warden of the Dauphin County Prison in Harrisburg, Pa., appeals from the judgment of sentence imposed following his conviction in a jury trial for a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO).[1] The indictment on which he was tried charged that in numerous instances he solicited or accepted bribes "as consideration for a decision, opinion, recommendation, vote and exercise of discretion as the Warden," contrary to 18 Pa.C.S.A. § 4701(a).[2] Prior to trial, Davis moved for the dismissal of the indictment both as time-barred and as failing to aver sufficient facts to give him notice of the charges against him. This motion was denied, the case was tried, and a verdict of guilty was returned. On appeal, Davis makes several contentions.

## I. THE TIME BAR

RICO prohibits a person from engaging in a "pattern racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" is defined, for purposes of this case, as bribery or extortion "which is chargeable under State law and punishable for more than one year." 18 U.S.C. § 1961(1)(A). Davis contends that prosecution for all the acts of bribery which the government charged and proved was barred by the relevant Pennsylvania statute of limitations. Because he contends that in RICO Congress intended to borrow state statutes of limitations for the predicate state offenses, Davis urges us to read the words "chargeable under State law" to mean "presently chargeable under State law." In *United States v. Forsythe*, 560 F.2d 1127, 1134 (3d Cir. 1977), we held that the governing statute of limitations is found, not in state law, but in 18 U.S.C. § 3282.

Davis argues that *Forsythe* was incorrectly decided, but that in any event it did not explicitly reject a refinement of his argument which we should now accept. That refinement is that the word "chargeable" does more than refer to state statutes of limitations; it defines the federal of-

---

1. Title IX of the Organized Crime Control Act of 1970, Pub.L. No. 91–452, tit. IX, 84 Stat. 941 (codified in 18 U.S.C. § 1961 et seq.).

2. 18 Pa.C.S.A. § 4701(a):
   *Offenses defined.*—A person is guilty of bribery, a felony of the third degree, if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:
   (1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient;
   (2) any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by the recipient in a judicial, administrative or legislative proceeding; or
   (3) any benefit as consideration for a violation of a known legal duty as public servant or party official.
   Prior to June 6, 1973, a comparable statute was codified in 18 P.S. § 4303.

fense. An offense, in other words, that is not "chargeable under State law" is not indictable under RICO.

■ It is true that *Forsythe* did not in so many words pass on this more refined argument, but we think it rejected it implicitly. The holding in *Forsythe* was that Congress intended to permit federal indictment within the time specified in § 3282 for offenses which, when committed, were "chargeable under State law and punishable for more than one year." The last-quoted words were meant to limit RICO to serious offenses, offenses which in many but not all jurisdictions would be called felonies.

■ We now make explicit what was implicit in *Forsythe*: the words "chargeable under State law" in § 1961(1)(A) mean "chargeable under State law at the time the offense was committed." Davis, therefore, has no ground for objecting to the timeliness of the indictment. We note, furthermore, that in this case three of the five acts of bribery which the government proved took place within the applicable state statute of limitations. Three acts of bribery make a pattern of racketeering activity. The relevant dates show that the pattern continued until well within even the state limitation. 18 Pa.C.S.A. § 108. For this additional reason, the indictment against Davis was timely returned.

## II. VAGUENESS

Davis's next argument is that the indictment did not give him fair warning of the offense with which he was charged. He acknowledges that it listed bribes in specific amounts from named individuals at designated times and places. But he claims that it failed to inform him of what precisely he was alleged to have done in return for each bribe. The indictment, which adopted almost verbatim the wording of 18 Pa.C.S.A.

§ 4701(a)(1), charged that each bribe was received "as consideration for a decision, opinion, recommendation, vote and exercise of discretion."

■ The short answer to Davis's argument is that the gravamen of the offense defined in § 4701 is the solicitation or acceptance of a bribe, not the delivery of its *quid pro quo*. In an analogous case we have held:

> The essence of the crime here charged is the receiving of the money, not the quid pro quo received or promised for that money, and where the statutes use the disjunctive to describe the alternate means of committing the same statutory offense and only one crime is charged, the means of commission are permissible.

*United States v. Laverick,* 348 F.2d 708, 714 (3d Cir. 1965) (citation omitted).

The government's position on appeal is that, because Davis did not object to the charge quoted in the margin,[3] he cannot now contend that the indictment should have specified the *quid pro quo*. We note that Davis did challenge the sufficiency of the indictment in a pretrial motion. For that reason, we do not rest our affirmance on Fed.R.Crim.P. 30. We hold instead that the indictment was sufficiently specific and that the charge was correct.

## III. EVIDENCE OF OTHER CRIMES

■ In addition, Davis urges that the trial judge erred when he permitted witnesses Sedesche and Myers to testify concerning other crimes of a similar nature. We have recently reaffirmed the importance of avoiding the undue prejudice which arises from the admission of evidence concerning prior crimes which has little probative value for the issues being tried. *See United States v. Cook,* 538 F.2d 1000 (3d Cir. 1976). In this case, however, the testi-

---

**3.** The court charged:

In Count II it is not necessary for the government to show that the Defendant had the authority to assist inmates in securing special favors, nor need the government show that the Defendant did anything at all to assist the inmates. The issue is not whether the Defendant successfully aided the inmates, but whether he agreed to accept money from two or more of the persons named out of the five, who expected that he would provide assistance in return for the money.

App. 812.

mony of Sedesche and Myers was relevant to Davis's motive or intent in accepting the money tendered. The evidence was, therefore, admissible under Fed.R.Ev. 404(b).

## IV. MOTION FOR JUDGMENT OF ACQUITTAL

Davis's final contention is that his motion for a judgment of acquittal should have been granted. In light of the record, this contention is frivolous.

## V. CONCLUSION

The judgment of the district court will be affirmed.

ALDISERT, Circuit Judge, concurring.

I join in Parts II–V of the majority opinion and concur in the result reached in Part I. I agree that at the time of the original indictment on June 1, 1977 and the superseding indictment on July 13, 1977, at least three incidents of bribery constituted acts "chargeable under State law and punishable by imprisonment for more than one year". 18 U.S.C. § 1961(1)(A). And with the majority I agree that these acts constitute a pattern of racketeering activity, sufficient to sustain a conviction under the indictment.

I part company with my brothers of the majority on a philosophical note only, a note that does not affect the outcome of our decision, but nevertheless reflects an important difference in interpreting a federal criminal statute widely used by the Department of Justice. I would hold that the acts of bribery occurring in 1972 and 1974[1] should not have been considered as "racketeering activity" under a 1977 federal indictment based on § 1961(1)(A) because these acts were no longer chargeable and punishable under Pennsylvania law.

1. The superseding indictment originally alleged an additional incident of bribery, occurring in 1970. Because the government's witness did not offer sufficient testimony regarding this alleged act, the government voluntarily withdrew this portion of the indictment at trial.

### I.

Under the federal statutory schema, the essential elements of a racketeering offense require an analysis of both federal and state law. Thus, a pattern of racketeering is defined as "at least two acts of racketeering activity", 18 U.S.C. § 1961(5), and racketeering activity is defined (for the purposes of this case) as "any act or threat involving . . . bribery . . . which is chargeable under State law and punishable by imprisonment for more than one year . . . ." 18 U.S.C. § 1961(1)(A).

The indictment alleged that the acts were violations of the Pennsylvania crime of bribery, proscribed in 18 P.S. § 4303 (prior to June 6, 1973), and 18 Pa.C.S.A. § 4701(a). By the provisions of 19 P.S. § 211, prosecution of this state crime is barred after the passing of two years from the date of the commission of the alleged act. Nevertheless, Count II of the indictment averred acts occurring on or about May 3, 1972, and November 22, 1974. Clearly, even if "chargeable" under Pennsylvania law, these offenses were not "punishable" in 1977, at the time of the federal indictment, because of the interposition of the state statute of limitations. Accordingly, I would hold that even applying the *federal* statute of limitations, *United States v. Forsythe,* 550 F.2d 1127 (3d Cir. 1977), the essential ingredients of a *federal offense* were lacking.

It is conceded that bribery of a state official is not a discrete offense under federal criminal statutes. It is equally clear to me that since the federal definitional statute requires that the racketeering offense be both chargeable *and* punishable under state law, the government could not, and did not, prove all the elements necessary under the federal statute. It was a simple case of legal impossibility of performance.[2]

2. *United States v. Berrigan,* 482 F.2d 171 (3d Cir. 1973), provides guidance in such a situation:

Legal impossibility is said to occur where the intended acts, even if completed, would not amount to a crime. . . . "It is common-

## II.

Although proper judicial interpretation of any federal statute is always important, proper judicial interpretation of a criminal statute is critical. The maxim *nullum crimen sine lege, nulla poena sine lege* reminds us that the courts may not punish conduct as criminal unless that conduct has transgressed the clear, plain, or fair meaning of the defined offense. In the federal courts, this means a congressionally defined offense, because there is no federal common law of crimes.

Nevertheless, an interesting notion is volunteered here that bribery activities which occurred in 1972 and 1974 can still fall within the congressional definition of racketeering in 1977, by declaring judicially that "the words 'chargeable under State law' in § 1961(1)(A) mean 'chargeable under State law at the time the offense was committed.'" (At 1067). This is not statutory *interpretation*; it is statutory *construction* in the pristine fabricating sense. It is a judicial, not legislative, definition of criminal activity, a genre of statutory interpretation outlawed by a host of Supreme Court decisions. *See, e. g., Huddleston v. United States*, 415 U.S. 814, 831, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974).

This semantic excursion ignores the precise language Congress utilized in § 1961(1)(A), to-wit, "any act or threat involving . . . bribery . . . which *is* chargeable under State law . . . ." (Emphasis added). The present tense of the copulative verb "is" was used. The use of the present tense indicates that this provision is to apply only to those acts chargeable and punishable at the time of the indictment. Had Congress intended otherwise it just as easily could have added "was or has been"; indeed, Congress could have used

the words the majority has added to the statute: "is chargeable under State law *at the time the offense was committed.*" But Congress did not add these words, and we cannot. We cannot, because to do so is to run counter to a basic tenet of interpretation of penal statutes, best evidenced by Mr. Justice Reed's statement in *United States v. Bramblett*, 348 U.S. 503, 509, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1954): "That criminal statutes are to be construed strictly is a proposition which calls for the citation of no authority."

## III.

Strict interpretation of a penal statute, of course, cannot be applied *in vacuo*; it cannot be utilized to thwart clearly expressed statutory text, or, in the event of ambiguity, the legislative purpose expressed in the statute or its legislative history. The reasoning and policy considerations guiding the interpretation of ambiguous statutory language were set out by Mr. Justice Marshall in *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971):

[A]s we have recently reaffirmed, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." . . . In various ways over the years, we have stated that "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221–222 [, 73 S.Ct. 227, 97 L.Ed. 260] (1952). This principle is founded on two policies that have long been part of our tradition. First, "a fair warning should be given to the world in language that the common world will un-

place that federal courts are courts of limited jurisdiction, and that there are no common law offenses against the United States. 'The legislative authority of the Union must first make an act a crime, affix a punishment to it, and declare the Court that should have jurisdiction of the offense.' . . . 'It is axiomatic that statutes creating and defining crimes cannot be extended by intendment,

and that no act, however wrongful, can be punished under such a statute unless clearly within its terms.'" . . . We distinguish between the defense of factual impossibility, which is not involved here, and legal impossibility, which is. 482 F.2d at 188–90 (citations omitted). *See United States v. Frumento*, 563 F.2d 1083, 1096–97 (3d Cir. 1977) (Aldisert, J., dissenting).

derstand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle v. United States,* 283 U.S. 25, 27 [, 51 S.Ct. 340, 75 L.Ed. 816] (1931) (Holmes, J.) See also *United States v. Cardiff,* 344 U.S. 174 [, 73 S.Ct. 189, 97 L.Ed. 200] (1952). Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." H. Friendly, Mr. Justice Frankfurter and the Reading of Statutes, in Benchmarks 196, 209 (1967).

404 U.S. at 347–48, 92 S.Ct. at 522–523 (1971) (footnote and citations omitted).

I have indicated that I find no ambiguity in the present tense descriptive language of those state offenses incorporated in § 1961(1)(A) as federal offenses. Assuming without conceding that there is ambiguity, my examination of the legislative history compels no contrary result.

### A.

The Racketeer Influenced and Corrupt Organizations statute (RICO) had as its genesis the Senate's Organized Crime Control Bill, introduced in early 1969. "Racketeering activity" was originally defined, in relevant part, as "any act involving the danger of violence to life, limb, or property indictable under State or Federal law and punishable by imprisonment for more than one year." The Justice Department, however, took the position that the suggested language was "too broad and would result in a large number of unintended applications, as well as tending toward a complete federalization of criminal justice."[3] It suggested that § 1961(1)(A) be redefined as

follows: "Any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, usury, or dealing in narcotic drugs, marihuana or other dangerous drugs, which is indictable under State law and punishable for more than one year." The Department stated, "It is felt that by thus narrowing the definition of the class of applicable state crimes in terms of their generic meaning the definition of 'racketeering activity' contained in Section 1961(1)(A) will be both broad enough to include most state statutes customarily invoked against organized crime yet narrow enough to be constitutional. *United States v. Nardello,* 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969)."

The Senate accepted the gist of the Justice Department's recommendations in its final passage of the crime control bill:

§ 1961(1). "[R]acketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year.

S.Rep.No. 91–617, 91st Cong., 1st Sess. 21 (1969). The bill was subsequently favorably considered in hearings before Sub-Committee No. 5 of the House Committee on the Judiciary, 91st Cong., 2d Sess., and, with minor amendments, was eventually enacted as the Organized Crime Control Act of 1970, P.L. 91–452, 84 Stat. 922.

### B.

From this legislative history, I draw several significant conclusions. The Justice Department's request that the statutory definition not be "too broad" was respected: state crimes were defined in "terms of their generic meaning" and federal crimes were defined with specificity in ·§ 1961(1)(B). The Senate Committee report noted that "[t]he state offenses are included by generic

---

3. Letter from Richard G. Kleindienst, Deputy Attorney General, to Senator John L. McClellan, Chairman of the Subcommittee on Criminal Laws and Procedure, *reprinted in Hearings on S. 30 before the Subcomm. on Criminal Laws and Procedures of the Senate Comm. on the Judiciary,* 91st Cong., 1st Sess. p. 405.

designation," Senate Report, *supra*, at 158, and the House Committee stated that " '[r]acketeering activity' is defined in terms of specific State and Federal criminal statutes", and that "State offenses are included by generic designation." 1970 U.S. Code Cong. & Admin.News, 91st Cong., 2d Sess., pp. 4010, 4032.

Congress therefore can be said to have heeded the Justice Department's admonition to avoid "a large number of unintended applications" and "a complete federalization of criminal justice." Therefore, § 904 of Title IX of P.L. 91–452, which provided that "[t]he provisions of this title shall be liberally construed to effectuate its remedial purpose," must be read in light of the language of the statute and the legislative history. And in viewing the legislative purpose, I detect nothing that precludes the application of the rule of narrow construction of penal statutes.

### IV.

In sum, I find the statutory language to be clear. For a federal offense to exist, by definition there must also be a state offense. There was no federal offense here, because the acts had to be "chargeable and punishable" under state law. "If the language of a statute be plain, admitting of only one meaning, the Legislature must be taken to have meant and intended what it plainly expressed." *Reuther v. Trustees of Trucking Employees*, 575 F.2d 1074 (3d Cir. No. 77–1986, 1978), *quoting* Lord Atkinson in *Vacher & Sons, Ltd. v. London Society of Compositers*, [1913] A.C. 107, 121–22 (House of Lords). "If the language be clear it is conclusive. There can be no construction where there is nothing to construe." *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 396, 18 L.Ed. 830 (1868).

And even assuming that there is ambiguity, we must resort to the principle that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States v. Bass, supra.* In view of the statute's text and its history, especially the congressional acquiescence in the Justice Department's request to narrow

the definition of state offenses, the application of the traditional principle of strict construction of this penal statute effectuates, rather than defeats, the obvious legislative purpose.

For all these reasons, I would hold that where one has been acquitted of a state offense, *see, e. g., United States v. Frumento, supra,* (Aldisert, J., dissenting), or where, as here, prosecution of a state offense is outlawed by a state statute of limitations at the time of the federal indictment, there is no generic state crime "chargeable and punishable under State law," and there cannot be a federal offense under § 1961(1)(A).