**UNITED STATES of America**

v.

**Augustine MAZZIO, a/k/a Gus Leon Mazzio, Theodore Paige, a/k/a Teddy Samuel Sliwoo.**

**Crim. No. 80–291.**

United States District Court, E. D. Pennsylvania.

Dec. 8, 1980.

Joel Friedman, Louis R. Pichini, U. S. Dept. of Justice, Philadelphia Strike Force, Philadelphia, Pa., for United States.

Nicholas Nastasi, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Defendants have been charged under a number of federal statutes with engaging in an illegal gambling operation affecting interstate commerce, and with conspiring to bribe Philadelphia police officers in furtherance of the gambling operation. Defendant Augustine Mazzio now moves to dismiss or to strike portions of the indictment.

### I. *RICO Charges*

Defendants have been charged under Title IX of the Organized Crime Control Act, "Racketeer Influenced and Corrupt Organizations" (RICO), 18 U.S.C. § 1961 *et seq.*, with conducting the affairs of an enterprise by engaging in a pattern of racketeering activities. The indictment charges that the enterprise in which the defendants participated was the illegal gambling operation. Mazzio contends that under 18 U.S.C. § 1961(4), an enterprise can only consist of a legitimate business entity, and does not extend to wholly illegal entities such as a gambling operation, because in enacting the RICO provisions the congressional intent was to prevent infiltration of legitimate business by organized crime. The government contends that the gambling operation in question fits within the literal terms of § 1961(4), in that the definition of enterprise includes any "group of individuals associated in fact although not a legal entity."

The Court of Appeals for the Third Circuit has not yet decided this question. *United States v. Provenzano*, 620 F.2d 985, 993 (3d Cir. 1980). In *dicta*, however, it noted that it was loathe to give a defendant the benefit of a defense that he should escape liability under RICO because he was careful to limit himself to wholly illegal

**342**

activities. *Id.* It also noted that five circuits have rejected the contention that RICO is limited in application to instances in which legitimate business is subverted. *United States v. Rone,* 598 F.2d 564 (9th Cir. 1979); *United States v. Swiderski,* 593 F.2d 1246 (D.C.Cir.1978), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2055, 60 L.Ed.2d 662 (1979); *United States v. Elliott,* 571 F.2d 880 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *United States v. Altese,* 542 F.2d 104 (2d Cir. 1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977); *United States v. Cappetto,* 502 F.2d 1351 (7th Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975). As Mazzio points out, only two circuits have adopted the construction urged by him. *United States v. Turkete,* 632 F.2d 896 (1st Cir. 1980); *United States v. Anderson,* 626 F.2d 1358 (8th Cir. 1980).[1]

RICO is a remedial statute which is to be liberally construed to effectuate its purposes. *United States v. Forsythe,* 560 F.2d 1127, 1135–36 (3d Cir. 1977); *United States v. Provenzano, supra.* All of the circuit courts which have given RICO a broad construction have noted that there is no reflection in the legislative history of a congressional intention to limit the reach of the statute, and that on its face it applies to "any" group of individuals associated in fact. The report of the Senate Judiciary Committee on the Organized Crime Control Act specifically noted that the government must be empowered "to prohibit directly substantial enterprises *of* gambling." Sen. Rep. 91–617, pp. 72, 73 (1969), (emphasis supplied). In the absence of clear evidence of a congressional intent to limit RICO prosecutions, and in view of indications in *Provenzano, supra,* that the Court of Appeals for the Third Circuit would follow the majority view, I agree with the government that the definition of enterprise under § 1961(4) is broad enough to encompass an organization wholly devoted to illegal pursuits.

Mazzio next contends that in counts one and two of the indictment, the government has failed to allege a sufficient effect upon interstate commerce, as required by § 1962(c). The government need not prove that each predicate act of racketeering charged has an effect on interstate commerce, but only that the activity of the enterprise itself does. *United States v. Nerone,* 563 F.2d 836, 852–54 (7th Cir. 1977). "The Government must show a nexus of the enterprise to interstate or foreign commerce, albeit minimal, to satisfy the requirement." *United States v. Rone,* 598 F.2d 564, 573 (9th Cir. 1979). Here, the government has alleged that Mazzio travelled from New Jersey to Pennsylvania to conduct the enterprise of illegal gambling. In view of the limited showing which must be made, I find that this is a sufficient effect on commerce under § 1962(c).

Mazzio next contends that the indictment does not show a pattern of racketeering activity as required by 18 U.S.C. § 1961(5), because it alleges a single, overall bribery scheme, which is insufficient to constitute a pattern. Under § 1961(5), a pattern of racketeering activity is defined as "at least two acts of racketeering activity," and both bribery and gambling are included in the definition of "racketeering" under subsection (1). Moreover, Mazzio is charged with tendering numerous payments as bribes, and each is chargeable as a separate offense, even though related to one overall scheme. In *United States v. Salvitti,* 451 F.Supp. 195 (E.D.Pa.), *aff'd,* 588 F.2d 824 (3d Cir. 1978), the defendant was charged with accepting a single bribe, and with engaging in at least one act of mail fraud. The district court held that this activity fell within the literal terms of the statute, and concluded that one overall illegal scheme, perpetrated by separate criminal acts, can constitute a pattern of racketeering, and can be prosecuted under the RICO statute. Here, since Mazzio is charged with engag-

---

1. In *United States v. Sutton,* 605 F.2d 260 (6th Cir. 1979), the Sixth Circuit also accepted the argument advanced by Mazzio. However, its decision was vacated and the case heard by the court *en banc* (6th Cir. Nov. 7, 1979). No decision has yet been rendered.

ing in at least two discrete acts of racketeering activity as defined by § 1961(1), and this fulfills the statute's definition of a pattern, I am satisfied that his activities do fall within the terms of the RICO statute.

■ Mazzio finally contends that the predicate offenses of bribery underlying the RICO charges are not "chargeable" and "punishable" under state law, as required by § 1961(1)(A), because the statute of limitations for these offenses has run. This argument is totally devoid of merit, because the Court of Appeals has held that the predicate offenses need only have been chargeable at the time they were committed. *United States v. Davis*, 576 F.2d 1065, 1066–67 (3d Cir. 1978). The state statute of limitations for the predicate offenses is simply irrelevant to the federal prosecution.

## II. *Impossibility*

■ Mazzio also attacks counts one, two, and seven of the indictment on the ground that it was impossible for him to accomplish the acts of bribery charged, in that the subject of the bribes was an undercover Philadelphia policeman, who accepted the money with the approval of his superiors, and who did not intend to perform any "service" in return for the money. Under Pennsylvania law, "the gravamen of the offense [of bribery] is the solicitation or acceptance of a bribe, not the delivery of its *quid pro quo.*" *Davis, supra*, 576 F.2d at 1067. It follows that the converse of this proposition is also true: the mere offering of a bribe to a public servant completes the offense. Furthermore, 18 Pa.Con.Stat.Ann. § 4701(b) specifically excludes as a defense an argument that the subject to whom the bribe was offered could not perform the actions desired by the person offering the bribe. Mazzio cannot therefore avail himself of an impossibility defense.

## III. *Due Process–Entrapment*

Mazzio further contends that he was entrapped by the government, and that the conduct of the police was so outrageous as to rise to the level of a due process violation. *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978). The defendant cites no particular facts in support of either contention, but rather relies on a general contention that the use of an undercover agent by police, who recorded conversations with the defendants, duped Mazzio into unfairly incriminating himself.

At this stage in the case, the record simply is not sufficiently developed to allow me to decide the merits of either contention. If the evidence at trial lends support to these contentions, Mazzio may renew his motion on these points or seek submission of these issues to the jury.

## IV. *Travel Act Violations*

■ Mazzio also moves to dismiss counts three, four, five and six of the indictment, contending that the travel with which he is charged is so minimal and peripheral to the gambling–bribery scheme that it does not fall within the terms of the Travel Act. 18 U.S.C. § 1952. Mazzio is charged with travelling from his home in New Jersey to Pennsylvania to bribe a police officer in connection with Mazzio's gambling operation.

Section 1952 states in part:
(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to–. . . .

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, . . .
shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

■ The Court of Appeals has cautioned that the Travel Act is not to be construed too narrowly. *United States v. Wander*, 601 F.2d 1251, 1256 (3d Cir. 1979). Conduct is punishable under the Act " 'if the interstate travel or the use of interstate facilities makes easier or facilitates the unlawful activity.' " *Id.* In *Wander*, it was held to be sufficient that the defendant made two interstate telephone calls and caused a third person to travel between states in furtherance of an extortion scheme. In *United*

*States v. Perrin,* 580 F.2d 730 (5th Cir. 1978), cited with approval by the Third Circuit in *Wander,* a single interstate telephone call was held to constitute a Travel Act violation.

Mazzio relies principally upon *Rewis v. United States,* 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). In *Rewis,* the Court reversed the Travel Act conviction of the operator of a gambling establishment, on the ground that travel between states by the customers of the establishment was, by itself, an insufficient nexus with interstate commerce. There was no evidence that the proprietor induced the travel, and the Court found it to be fortuitous. Here, in contrast, it is the operator of the establishment who is charged with purposefully crossing state lines to bribe a police officer in furtherance of the scheme. Indeed, the Court in *Rewis* made clear that it is precisely the kind of conduct with which Mazzio is charged that is the focus of the Travel Act.

Legislative history of the Act is limited but does reveal that § 1952 was aimed primarily at organized crime and, more specifically, at persons who reside in one State while operating or managing illegal activities located in another.

401 U.S. at 811, 91 S.Ct. at 1059.

This was the view taken by the court in *United States v. Barrow,* 363 F.2d 62 (3d Cir. 1966), which upheld the conviction of the owner of a gambling establishment who had two employees commute to work from New Jersey to the gambling site in Pennsylvania each day. Mere knowledge of the employees' travel on the owner's part was deemed sufficient to constitute a violation of the Act. Clearly, therefore, the government's indictment of Mazzio under the Travel Act is not improper in this case.

### V. *Multiplicity*

■ Mazzio also contends that the indictment is multiplicitous, in that the facts alleged describe one basic offense, bribery in furtherance of an illegal gambling operation, but he is charged with violating three separate provisions of Title 18 of the United States Code. Specifically, Mazzio contends that counts one, two and seven are multipli-

citous. Count one charges that the defendants conspired to violate 18 U.S.C. § 1962(c), which prohibits engaging in the conduct of an enterprise through a pattern of racketeering activities. Count two charges the substantive offense of violating § 1962(c) itself. Count seven charges the defendants with violating 18 U.S.C. § 1511, which prohibits conspiracy to obstruct law enforcement in furtherance of an illegal gambling business.

■ Mazzio does not raise a traditional double jeopardy argument, but the multiplicity theory which he advances has been described as inherent in double jeopardy principles proscribing multiple punishments for the same offense. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). The test to determine whether two or more offenses are distinguishable was stated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each requires proof of a fact which the other does not.

*Accord, Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Iannelli v. United States,* 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 1293 n.17, 43 L.Ed.2d 616 (1975); *Whalen, supra,* 100 S.Ct. at 1438. The test focuses upon the statutory elements of the offenses, and separate offenses may exist notwithstanding substantial overlaps in proof at trial. *Brown v. Ohio,* 432 U.S. at 166, 97 S.Ct. at 2225.

There is little doubt that counts one and two of the indictment charge distinct offenses involving § 1962(c), since it has long been recognized that a defendant can be charged with both a substantive offense and conspiracy to commit that offense without violating the prohibition against dual punishment. *Iannelli, supra.* The real issue therefore is whether the government may simultaneously prosecute under § 1511. Having considered the elements of each of-

fense, although the issue is a close one, I conclude that it may. In order to establish a RICO violation under § 1962(c), the government must prove that the defendants engaged in an enterprise through a pattern of racketeering activities which affects interstate commerce. Moreover, in light of the specific indictment returned here, the government must prove that the defendants engaged in interstate travel in furtherance of the activity. In order to establish a § 1511 violation, there is no need to establish an effect on interstate commerce or interstate travel. Moreover, § 1511 requires proof of elements which the RICO statute does not, namely, that the defendants conspired to obstruct law enforcement, and that more than five individuals were involved in the gambling scheme.

Similarly, there are elements to the RICO conspiracy charge which differ from the § 1511 charge, and vice versa. To establish the RICO conspiracy, the government must prove a specific agreement to violate § 1962(c), which is no part of the § 1511 charge. Conversely, to establish the § 1511 charge, the government must prove that five or more persons engaged in an illegal gambling operation and conspired to obstruct law enforcement, which are not elements of the conspiracy to violate § 1962(c).

Accordingly, since each of the three statutory provisions requires proof of an element not required by the other two, the defendants are properly charged under all three, even though as a factual matter there may have been a single overall scheme, and even though proof under each of the three counts at issue will substantially overlap. Mazzio's motion to dismiss on the ground of multiplicity will be denied.