

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-26-1997

# Williams v. Stone

Precedential or Non-Precedential:

Docket 96-1433

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Williams v. Stone" (1997). *1997 Decisions.* Paper 72.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/72

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 96-1433

_____

MICHAEL WILLIAMS; MARILYN WILLIAMS, h/w,
sole shareholders in and on behalf of HELENED INCORPORATED,
a dissolved Pennsylvania Corporation,

Appellants

v.

ELLIOTT W. STONE; HAROLD G. STONE; RICHARD ABT;
JOHN L. BARRY; AL BISCARDI

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 96-cv-00014)

_____

Argued January 9, 1997

BEFORE:  COWEN, ALITO and ROSENN,
Circuit Judges

(Filed March 26, 1997)


Ralf W. Greenwood, Jr., Esq. (argued)
Ralf W. Greenwood & Associates
1717 Arch Street
Bell Atlantic Tower, 37th Floor
Philadelphia, PA  19103

        COUNSEL FOR APPELLANTS
        MICHAEL WILLIAMS
        MARILYN WILLIAMS

C. Joseph Curran, Jr.
Attorney General of Maryland
Dale E. Cantone, Esq. (argued)
Office of Attorney General of Maryland
200 Saint Paul Place
20th Floor
Baltimore, MD  21202

COUNSEL FOR THE
STATE OF MARYLAND
AMICUS CURIAE IN SUPPORT OF APPELLANT

Benjamin A. Levin, Esq. (argued)
Levin & Hluchan
1200 Laurel Oak Road
Suite 100
Voorhees, NJ  08043

        COUNSEL FOR APPELLEES
        ELLIOTT W. STONE
        HAROLD G. STONE
        RICHARD ABT
        JOHN L. BARRY
        AL BISCARDI

---

OPINION

---

COWEN, Circuit Judge.

Plaintiffs appeal from the April 16, 1996, judgment of the district court granting defendants' motion to dismiss the amended complaint pursuant to FED. R. CIV. P. 12(b)(6).  See Williams v. Stone, 923 F. Supp. 689 (E.D. Pa. 1996).  We will affirm the judgment of the district court, although on different grounds than those relied upon by the district court.

**I.**

West Coast Video Enterprises, Inc. ("WCVE") is a Pennsylvania corporation with its principal place of business in Pennsylvania.  WCVE sells franchises for retail video rental businesses operating under the name "West Coast Video."  WCVE supplies its franchisees with equipment, computers, software, video films, expertise, and training in the operation of retail video rental businesses.  By September of 1986, WCVE had at least

2

221 franchises in fourteen states, including eleven in Maryland. Defendants are executives, employees, and agents of WCVE (collectively "WCV").

In June of 1985, plaintiffs Michael and Marilyn Williams, residents of Pennsylvania, visited a WCVE store located in Philadelphia for the purpose of investigating the purchase of a WCVE franchise. By November of 1988, defendant John Barry, Vice President of Franchise Development for WCVE, had written the Williamses twice and phoned them six times concerning their prospective purchase of a franchise.

In March of 1989, the Williamses visited WCVE corporate headquarters in Philadelphia to further investigate the purchase of a WCVE franchise. At that time executives of WCVE made a number of representations alleged to have been fraudulent. On March 29, 1989, the Williamses, acting through their wholly-owned corporation, Helened, Inc., purchased a WCVE franchise located in Ocean City, Maryland pursuant to a written franchise agreement ("the Franchise Agreement"). The Franchise Agreement was executed in Pennsylvania. Article IX, paragraph 2 of the Franchise Agreement provides: "[N]either this Agreement nor any of its rights or privileges . . . shall be assigned, transferred, mortgaged, charged, encumbered or divided in any manner by the Franchisee or anyone else unless the prior written approval of the Franchisor is obtained." App. at 209. Article IX, paragraph 2E of the Franchise Agreement provides that such approval may be conditioned on
> [t]he Execution by the Franchisee of a
> release of any and all claims against

> Franchisor, and the Franchisor's officers,
> directors, agents and employees, arising out
> of or related to this Agreement, which
> release shall contain such language and be of
> the form chosen by Franchisor.  The release
> shall not release any liability specifically
> provided for by any state statute regulating
> franchising.

Id. at 210.  Article XIII of the Franchise Agreement provides, in part:  "This Agreement shall be construed according to the laws of the Commonwealth of Pennsylvania . . . ."  Id. at 214.

The Williamses opened the store in September of 1989.  They claim that WCVE failed in several respects to abide by its obligations as set forth in the Franchise Agreement, and they sold the store to a third party some 27 months later.  As a condition of WCVE's consent to this sale, the Williamses signed a release of any and all claims against WCVE and its officers, directors, agents, and employees ("the Release").  The Release was executed in Ocean City, Maryland.  At the time the Release was signed, more than seven years remained on the Franchise Agreement.

The Williamses brought this action in the district court on January 2, 1996.  In an amended complaint containing ten causes of action, the Williamses alleged that defendants operated WCVE as an "enterprise" in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (1984).  In support of their RICO claims, they alleged that WCV engaged in the following "racketeering activity," within the meaning of 18 U.S.C. § 1961(1) (Supp. 1997):  (1) criminal violations of the Maryland Franchise Registration and Disclosure Act ("MFRDA"), MD.

4

CODE ANN., BUS. REG. § 14-201 et. seq. (1992);[1] (2) violations of
Federal Trade Commission regulations promulgated at 16 C.F.R. §
436.1 et seq., pursuant to 15 U.S.C. § 45(a)(1) (Supp. 1996); (3)
violations of the Aid to Small Businesses Act, 15 U.S.C. § 645(a)
(1976); and (4) bank fraud in violation of 18 U.S.C. § 1344
(Supp. 1996).  The Williamses further alleged that WCV conspired
to engage in the above-described racketeering activity in
violation of 18 U.S.C. § 1962(d) (Supp. 1996).

On April 16, 1996, the district court granted WCV's motion
to dismiss the amended complaint on the grounds that the Release
bars any action by the Williamses against WCV.  See Williams, 923
F. Supp. at 693.[2]  This appeal followed.

**II.**

The district court had subject matter jurisdiction over this
federal RICO action pursuant to 28 U.S.C. § 1331 (1993).
Pursuant to 28 U.S.C. § 1291 (1993), we exercise appellate
jurisdiction over the district court's final order dismissing the

---

[1]We note that the current version of the Maryland Franchise
Registration and Disclosure Act ("MFRDA") went into effect in
1992, after the operative facts relevant to this action occurred.
 Because the parties have not alerted us to any relevant
distinctions between this version and the former version of the
MFRDA, we cite to the current version, as do the parties.

[2]WCV raised two additional arguments in its motion to dismiss
the amended complaint: (1) that the Williamses' RICO claims are
barred by the statute of limitations; and (2) that the Williamses
have failed adequately to plead a pattern of racketeering activity
pursuant to RICO.  See Williams v. Stone, 923 F. Supp. 689, 691
(E.D. Pa. 1996).  The district court relied solely on WCV's
Release argument in dismissing the amended complaint and did not
address these two additional issues.  See id. at 693 & n.3.
Accordingly, and in light of our disposition of this matter, we do
not address the additional defenses.

amended complaint.

**A.**

The parties agree that, even though this matter is premised on federal causes of action, state law governs the applicability of a release to those causes of action. See Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 892 n.15 (3d Cir. 1975). The parties disagree over which state law applies –– Pennsylvania or Maryland. WCV claims that Pennsylvania law applies, given the choice-of-law provision in the Franchise Agreement, while the Williamses claim Maryland law applies.[3]

Before engaging in an extensive and complex analysis of the thorny choice-of-law questions this case presents, we must first determine whether there exists a true conflict between the application of Pennsylvania and Maryland law. Under general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a "false conflict," and the Court should avoid the choice-of-law question. See Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir. 1994) (applying Pennsylvania choice-of-law rules); Coons v. Lawlor, 804 F.2d 28, 30 (3d Cir. 1986) (same); In re Complaint of Bankers Trust Co., 752 F.2d 874,

---

[3]WCV states that "Plaintiffs have abandoned . . . on appeal" the argument that "the parties failed to make an effective choice of Pennsylvania law as the law applicable to their franchise relationship," and now argue "for the first time that a thorough choice of law analysis was necessary to determine the state law applicable to the Release." Appellees' Br. at 2; see also id. at 8. The distinction WCV attempts to draw is without substance. We have not been alerted to any difference between the Williamses' position here and the position they took in the district court.

6

882 (3d Cir. 1984) (same); Rohm and Haas Co. v. Adco Chem. Co., 689 F.2d 424, 429 (3d Cir. 1982) (applying New Jersey choice-of-law rules).

As the Williamses essentially concede, if Pennsylvania law applies, the Release is valid and bars their action.[4] However, the parties disagree over whether the Release is valid pursuant to Maryland law as well. Thus, in order to determine whether a true conflict is presented, we must decide which party proffers the correct interpretation of Maryland law.

**B.**

Section 14-226 of the Maryland Code Annotated, Business Regulations provides: "As a condition of the sale of a franchise, a franchisor may not require a prospective franchisee to agree to a release, assignment, novation, waiver, or estoppel that would relieve a person from liability under this subtitle" (emphasis added). The Williamses contend that this provision

_____

[4]The Williamses also contend that the Release is invalid as unsupported by consideration. Under both Maryland law, see Vogelhut v. Kandel, 517 A.2d 1092, 1096 (Md. 1986), and Pennsylvania law, see Channel Home Ctrs. v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986) (applying Pennsylvania law); Stelmack v. Glen Alden Coal Co., 14 A.2d 127, 128 (Pa. 1940); PNC Bank, N.A. v. Balsamo, 634 A.2d 645, 655 (Pa. Super. 1993), consideration for a promise consists of either some benefit to the promisor or some detriment to the promisee. In a nearly identical fact pattern, using an identical definition of consideration pursuant to Virginia law, the Court of Appeals for the Fourth Circuit has written that the benefit consisting of a franchisee's "ability to get out of a business which he had determined was not profitable . . . constitutes sufficient consideration to support [a] release[]." Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1261 (4th Cir. 1991). We agree.

Counsel for the Williamses additionally contended at oral argument, for the first time, that the Release was unconscionable. In light of the delay in raising this issue, we decline to address this contention.

renders the Release invalid if Maryland law applies.

WCV argues that because section 14-226 protects only "prospective" franchisees, and because the Release was signed when the Williamses were already franchisees, the Williamses may not rely on section 14-226 to avoid the Release, even assuming arguendo that Maryland law applies. The district court agreed with this reasoning and relied on it, in part, in dismissing the amended complaint. See Williams, 923 F. Supp. at 692-93. WCV also argues that, assuming Maryland law applies, section 14-226 invalidates the Release only as to causes of action grounded in the MFRDA, and that the Release still bars the Williamses from bringing this federal RICO action. Because we agree with this second contention, we do not address whether the district court correctly held that section 14-226 is inapplicable to this matter on the ground that the Williamses were not "prospective franchisee[s]" when they executed the Release.

**1.**

The plain language of section 14-226 supports WCV's contention that that provision invalidates the Release only insofar as the Release purports to waive a cause of action pursuant to the MFRDA. Maryland could have, but chose not to, forbid a franchisor from requiring a franchisee to agree to a release or waiver "that would relieve a person from liability." Cf. 815 ILL. COMP. STAT. ANN. 705/41 (West 1996) ("Any condition . . . purporting to bind any person acquiring any franchise to waive compliance with any provision of this Act or any other law of this State is void.") (emphasis added); S.D. CODIFIED LAWS § 37-5-

12 (Michie 1996) ("Any condition . . . in any agreement evidenced by a franchise agreement . . . purporting to waive compliance with any provision of this chapter, <u>or other provision of state law applying to such agreements</u>[,] is void as a matter of public policy.") (emphasis added); VA. CODE ANN. § 59.1-21.11(10) (Michie 1996) ("Any provision in any agreement or franchise purporting to waive any right or remedy under this chapter <u>or any applicable provisions of the Petroleum Marketing Practices Act (15 U.S.C. § 2802 et. seq.)</u> shall be null and void.") (emphasis added). By adding the words "under this subtitle," the Maryland legislature substantially limited the reach of the anti-waiver provision. We must examine the Williamses' claims to determine whether they are premised on WCV's alleged "liability under" the MFRDA.

**2.**

The Williamses have brought this action pursuant to 18 U.S.C. § 1962(c) and (d). Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"Racketeering activity" is defined as, <u>inter</u> <u>alia</u>, conduct involving any one of nine enumerated offenses that "is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). Section 1962(d) forbids conspiring to violate, <u>inter</u> <u>alia</u>, section 1962(c).

The Williamses have alleged that WCV engaged in

9

"racketeering activity" by violating certain criminal provisions of the MFRDA.  Thus, the Williamses argue, WCV's liability arises under the MFRDA, even as this liability provides the predicate act under RICO.  According to the Williamses, the anti-waiver provision forbidding a release "from liability under this subtitle" prohibits WCV from extracting not only a release of claims brought directly pursuant to the MFRDA, but also a release of RICO claims predicated on allegations of criminal violations of the Maryland statute.

This contention is at odds with our decision in United States v. Forsythe, 560 F.2d 1127, 1135 (3d Cir. 1977).  In that case, criminal indictments were brought pursuant to 18 U.S.C. § 1962(c) and (d), charging defendants with "racketeering activities" consisting of "`acts of bribery . . . in violation of the laws of the Commonwealth of Pennsylvania.'"  Id. at 1131-32 n.2 (quoting indictment) (alteration in original).  The district court dismissed some of the indictments based on the fact that the two-year limitations period for bribery under Pennsylvania law had expired.  See id. at 1134 & n.9.

We reversed, holding that "the applicable period of limitations is governed by federal, rather than state, law."  Id. at 1134.  We reasoned:

> RICO is a federal law proscribing various racketeering acts which have an effect on interstate or foreign commerce.  Certain of those racketeering, or predicate[,] acts violate state law and RICO incorporates the elements of those state offenses for definitional purposes.  State law offenses are not the gravamen of RICO offenses.  RICO was not designed to punish state law violations; it was designed to punish the

10

> impact on commerce caused by conduct which
> meets the statute's definition of
> racketeering activity. To interpret state
> law offenses to have more than a definitional
> purpose would be contrary to the legislative
> intent of Congress and existing state law.

Id. at 1135 (footnote omitted); see also United States v. Pungitore, 910 F.2d 1084, 1131 (3d Cir. 1990) ("[T]he state offenses enumerated in section 1961(1) are merely definitional."); United States v. Davis, 576 F.2d 1065, 1066-67 (3d Cir. 1978); United States v. Frumento, 563 F.2d 1083, 1087 (3d Cir. 1977) ("`[R]eference to state law [in section 1961(1)(A)] is necessary only to identify the type of unlawful activity in which the defendant intended to engage.'") (quoting United States v. Cerone, 452 F.2d 274, 286 (7th Cir. 1971)) (alterations added). We have applied the teachings of Forsythe and its progeny in the civil RICO context. See, e.g., Rose v. Bartle, 871 F.2d 331, 361-62 (3d Cir. 1989).

While this case raises a different legal issue, the reasoning utilized in Forsythe applies here with full force. RICO is a federal statute. It arguably incorporates elements of certain offenses under the MFRDA as "racketeering activity," or "predicate acts." However, state law in this case simply provides the meaning of "racketeering activity" pursuant to section 1961(1)(A). Thus, the state law offenses the Williamses claim were committed by WCV serve no more than a "definitional purpose" vis-à-vis an allegation of a RICO violation -- they merely define the types of activity that may constitute predicate acts pursuant to the federal RICO statute. The gravamen of

11

their RICO cause of action is not the violation of state law, but rather certain conduct, illegal under state law, which, when combined with an impact on commerce, constitutes a violation of federal law. Therefore, it is not alleged that WCV is subject to "liability under" the MFRDA; their liability to the Williamses, if any, stems from RICO. Assuming arguendo that Maryland law applies, because section 14-226 invalidates the Release only insofar as it relieves WCV of "liability under" the MFRDA, the Release is valid to the extent it relieves WCV of liability under any other statute, including RICO.

### 3.

The Williamses urge that, even if section 14-226 applies only to those waivers of liability under the MFRDA, the Release would be void ab initio pursuant to Maryland law because the Release purports to waive all of WCV's liability and because it does not contain a severability clause. We reject this argument. The Franchise Agreement provides that any release executed by the Williamses in exchange for consent to assign the franchise "shall not release any liability specifically provided for by any state statute regulating franchising." App. at 210. Furthermore, the Franchise Agreement contains a severability clause. While the Release itself contains no such exceptions and no severability clause, the Release is inextricably intertwined with the Franchise Agreement, because the execution by the Williamses of the Release was required by the Franchise Agreement. Cf. Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1259 (4th Cir. 1991). Read together, again assuming that

12

Maryland law applies, the two documents carve out and preserve WCV's liability under the MFRDA.

Moreover, even absent those provisions in the Franchise Agreement, section 14-226, if it is applicable in this matter, is implicitly incorporated into the Release, rendering unenforceable that portion that purports to waive WCV's liability pursuant to the MFRDA.  It is

> indelibly clear that Maryland adheres to the general rule that parties to a contract are presumed to contract mindful of the existing law and that all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, except where a contrary intention is evident.

Wright v. Commercial and Sav. Bank, 464 A.2d 1080, 1083 (Md. 1983) (citing cases); see also Post v. Bregman, 686 A.2d 665, 673 (Md. App. 1996); Heyda v. Heyda, 615 A.2d 1218, 1222 (Md. App. 1992).  Accordingly, no severability clause was necessary in the Release and section 14-226 would not render the Release void ab initio pursuant to Maryland law.

## C.

We conclude that, pursuant to Maryland law, the Release would bar this action.  The parties agree that this action would be barred by the Release pursuant to Pennsylvania law as well.  Accordingly, no true conflict is presented and the Court need not address the choice-of-law issues.

## III.

Pursuant to the law of either Pennsylvania or Maryland, the Release is valid, at least insofar as it waives WCV's liability

13

pursuant to RICO.  Accordingly, the Williamses are barred from bringing this RICO action regardless of which state's law applies.  The April 16, 1996, judgment of the district court will be affirmed.

Each party to bear its own costs.